DUNSTAN KINCH vs. DIRECTOR OF THE DIVISION OF
EMPLOYMENT SECURITY.

Suffolk. March 10, 1987. — April 16, 1987.

Present: GRANT, KAPLAN, & KASS, JJ.

*Employment Security,* Eligibility for benefits. *Public Policy. Words,* "Misconduct."

In an appeal under G. L. c. 151A, § 42, from a decision of a District Court
affirming the determination of a board of review in the Division of
Employment Security that an employee was disqualified from receiving
unemployment benefits because his discharge from employment was
shown to be "attributable solely to deliberate misconduct in wilful disregard of the [employing unit's] interest", this court held, in remanding
the case for further findings, that an employee's refusal to accede to a
request to work seven consecutive days in violation of G. L. c. 149,
§ 48, does not constitute "misconduct" within the meaning of G. L.
c. 151A, § 25 (*e*) (2), and that depriving an employee of unemployment
benefits solely for the reason that he refused to work in circumstances
which would result in a violation of law would be against public policy.
[79-83]

CIVIL ACTION commenced in the Roxbury Division of the
District Court Department on November 5, 1984.

The case was heard by *Julian T. Houston,* J.

*Fred M. Enman, Jr.,* for the employee.

*Wendy Thaxter,* Assistant Attorney General, for Director of
the Division of Employment Security.

GRANT, J. This is an appeal to this court (G. L. c. 151A,
§ 42, as most recently amended by St. 1985, c. 314, § 3) from
a decision of the Municipal Court of the Roxbury District
which, in effect, affirmed an amended decision of the board
of review (board) in the Division of Employment Security
(division) which had determined that the plaintiff was disquali-

fied from receiving unemployment benefits because his dis-
charge from employment had been shown to be "attributable
solely to deliberate misconduct in wilful disregard of the [em-
ploying unit's] interest" within the meaning of G. L. c. 151A,
§ 25(e)(2), as appearing in St. 1975, c. 684, § 78. We reverse
and remand to the division because the board failed to consider
the question whether, in the circumstances, the plaintiff's be-
havior constituted "misconduct" within the meaning of
§ 25(e)(2).

It is undisputed that the plaintiff was discharged because he
failed and refused to report for overtime work for which his
employer had scheduled him on Sunday, August 21, 1983.
The plaintiff learned of that scheduling and voiced his refusal
to his employer on the previous day, a Saturday. It is unclear
from the record whether the plaintiff gave the employer any
reason for his refusal at that time, but it seems likely that the
refusal was motivated by the plaintiff's desire to attend to a
personal matter on the following day. By the time the matter
came on for hearing before a review examiner (G. L. c. 151A,
§ 42[a]) on the employer's appeal from an initial award of
unemployment benefits, the plaintiff was complaining (albeit
in somewhat inarticulate fashion) that the Saturday on which
he had indicated his refusal had been his sixth consecutive day
of work for the employer and that the plaintiff's working on
the next day (Sunday) would have resulted in a violation of
law. See G. L. c. 149, § 48.[1] The examiner seems to have
grasped the import of the plaintiff's complaint,[2] but nothing

---

[1] General Laws c. 149, § 48, as appearing in St. 1939, c. 235, § 1,
provides in material part as follows: "Every employer of labor engaged in
carrying on any manufacturing . . . establishment or workshop in the
commonwealth shall allow every person . . . at least twenty-four consecutive
hours of rest, which shall include an unbroken period comprising the hours
between eight o'clock in the morning and five o'clock in the evening, in
every seven consecutive days. . . . Whoever violates this section shall be
punished by a fine of fifty dollars."

[2] For instance, the following passages appear in the transcript of the
hearing held on July 12, 1984: (1) "THE PLAINTIFF: Well I did work six
days that week, but I told him I wouldn't be able to come in on Sunday,
that I had some business to take care of"; and (2) "THE PLAINTIFF: They say

came of it, perhaps because the plaintiff was then appearing pro se and obviously had no idea of how to go about asserting his rights.

The cases are legion to the effect that the director, the hearing examiners and the board (G. L. c. 151A, §§ 1[*d*], 40 & 41) are all under a duty to explore and make findings of fact as to the employee's state of mind at the time of his misconduct whenever an employer attempts to invoke the provisions of G. L. c. 151A, § 25(*e*)(2), to defeat the employee's claim for unemployment benefits. See, to name only a few, *Garfield* v. *Director of the Div. of Employment Sec.,* 377 Mass. 94, 97 (1979); *Reavey* v. *Director of the Div. of Employment Sec.,* 377 Mass. 913, 914 (1979); *Torres* v. *Director of the Div. of Employment Sec.,* 387 Mass. 776, 779 (1982); *Jones* v. *Director of the Div. of Employment Sec.,* 392 Mass. 148, 150 (1984); *Cantres* v. *Director of the Div. of Employment Sec.,* 396 Mass. 226, 228, 229-231 (1985). This is the first occasion on which either of our appellate courts has been called upon to make an express determination of the meaning of the word "misconduct" as used in § 25(*e*)(2). The novelty of the question need not detain us because the decided cases provide all the guidelines necessary to a resolution of that question for the purposes of this case. Thus, the *Garfield* case speaks of misconduct in terms of "[an] intentional disregard of standards of behavior which [the] employer has a right to expect" and of "the reasonableness of [the employer's] expectation." 377 Mass. at 97. In *Hawkins* v. *Director of the Div. of Employment Sec.,* the court spoke of misconduct in terms of the employee's "refusal to comply with his employer's reasonable request" for action.

---

they are going to demand you to work [on Saturday and Sunday]. THE EXAMINER: To work both days? THE PLAINTIFF: Seven days. THE EXAMINER: Every week? THE PLAINTIFF: Every week — they want you to work seven days. THE EXAMINER: Isn't that against the law? THE PLAINTIFF: As far as I know. Every week . . . ." The tape of that hearing was played at the outset of a further hearing held before a different examiner on September 17, 1984. The question of a possible violation of G. L. c. 149, § 48, was raised by the plaintiff in the first paragraph of the first petition for judicial review which was filed by his counsel in the Municipal Court and was renewed in the last paragraph of a second petition to the Municipal Court.

392 Mass. 305, 308 (1984). In the *Cantres* case the court said that in applying § 25(*e*)(2) the "board must take into account the employer's expectations of the employee, the notice to the employee of these expectations, and the reasonableness of the expectations." 396 Mass. at 231.

An expectation on the part of an employer that an hourly employee will accede to a request that he work in violation of G. L. c. 149, § 48, would not be a reasonable one within the meaning of any of the cases just cited. A demand that an employee work in violation of the statute would be tantamount to insistence on "behavior which [the] employer has [no] right to expect" within the meaning of the *Garfield* case. Depriving an employee of unemployment benefits solely for the reason that he refuses to yield to such a demand would be against public policy (compare *DiLeo* v. *Daneault,* 329 Mass. 590, 595-596 [1953]; *DeRose* v. *Putnam Management Co.,* 398 Mass. 205, 208-211 [1986]) and could hardly have been within the contemplation of the Legislature when it enacted what is now G. L. c. 151A, § 25(*e*)(2). See *Goodridge* v. *Director of the Div. of Employment Sec.,* 375 Mass. 434, 436 (1978); *Garfield* v. *Director of the Div. of Employment Sec.,* 377 Mass. at 95; *Jones* v. *Director of the Div. of Employment Sec.,* 392 Mass. at 150. Accordingly, we conclude that an employee's refusal to work in circumstances which would result in violation of G. L. c. 149, § 48, does not constitute "misconduct" within the meaning of § 25(*e*)(2). Our conclusion holds without regard to whether the employee is aware of or asserts his rights under § 48 at the time of his discharge.

As we have already pointed out, the amended decision of the board under judicial review reflects no consideration of the question whether the plaintiff's behavior amounted to "misconduct" within the meaning of § 25(*e*)(2). "An administrative agency must make findings on each factual issue essential to its decision." *Reavey* v. *Director of the Div. of Employment Sec.,* 377 Mass. at 914. *Coulouras* v. *Director of the Div. of Employment Sec.,* 394 Mass. 817, 820 (1985). The present decision is deficient in that respect.

Accordingly, the decision of the Municipal Court is reversed, and the matter is remanded to the Division of Employment Security for a determination by the board of review of the question whether the plaintiff's working on Sunday, August 21, 1983, would have resulted in a violation of G. L. c. 149, § 48. In the alternative, the board may send the matter back to the last review examiner who acted on the matter for additional findings and for determination of the same issue. In either event, the determination is to be made on the evidence already in the record and such additional evidence as may be offered by the plaintiff or by the employer. If it is determined by the division that a violation of the statute would have resulted from the plaintiff's working on the day in question, he is to be awarded unemployment benefits without further ado.

*So ordered.*