LOVELAND MANAGEMENT CORPORATION, Plaintiff-Appellant, v. THE BOARD OF REVIEW OF THE DEPARTMENT OF EMPLOYMENT SECURITY *et al.*, Defendants-Appellees (Patrick N. Mahoney, Defendant).

Second District No. 2—87—0687

Opinion filed March 1, 1988.

Robert G. Gibson, of Dommermuth, Brestal, Cobine, Roth & West, of Naperville, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Shawn W. Denney, Solicitor General, and Respicio F. Vazquez, Assistant Attorney General, of Chicago, of counsel), for appellees.

JUSTICE NASH delivered the opinion of the court:

The plaintiff, Loveland Management Corporation, appeals from an order of the circuit court affirming a grant of unemployment benefits to defendant, Patrick Mahoney. On appeal, plaintiff contends that Mahoney was ineligible for benefits under the Unemployment Insurance Act (Ill. Rev. Stat. 1985, ch. 48, pars. 300 through 820) because he was discharged for misconduct connected with his work. We affirm.

On May 15, 1985, Patrick Mahoney was discharged from his employment as the maintenance man for the Ogden Manor Apartments in Naperville, Illinois, and in December 1985, he was granted unemployment benefits pursuant to section 500(C) of the Unemployment Insurance Act (Ill. Rev. Stat. 1985, ch. 48, par. 420(C)). This determination included a finding that Mahoney performed his job to the best of his ability and was not disqualified from receiving benefits. The plaintiff appealed this determination, and a telephone hearing was conducted on February 4, 1986, before hearing referee Lamberto Arzadon.

The only witnesses who testified at the hearing were Mahoney and Denise Loveland, president of Loveland Management Corpora-

tion. Loveland testified that Mahoney had been employed as the maintenance man for Ogden Manor from January 1, 1985, to May 15, 1985, and that when she arrived at Ogden Manor at 10 a.m. on May 15, Mahoney was at home. At that time, she noticed that garbage had piled up in the garbage chutes, the lawn had not been cut, and the lobby of the building was dirty. Mahoney met Loveland at the management office wearing only shorts and sandals, and she immediately discharged him. Loveland also stated that two other major incidents which occurred during Mahoney's tenure contributed to his dismissal. One was a report from the Naperville fire inspector listing 17 safety violations at Ogden Manor. These violations ranged from lint collecting behind the clothes dryers and garbage near a furnace to an inoperative fire alarm system. Loveland stated that it was not Mahoney's duty to repair the alarm system, but he was required to report its condition to the manager. Loveland testified that when she discharged Mahoney, some of these violations had not been repaired. The other incident concerned the "rodding out" of the sewer main for Ogden Manor. Loveland stated that in March she instructed Mahoney to have the sewer main rodded out. This was not done, and three apartments were flooded by sewage in April. Loveland testified also that Mahoney did not clean out the flooded apartments until two or three days after the incident.

Mahoney testified that he had little experience as a maintenance man and that Loveland knew this when he was hired. He stated that in addition to his regular maintenance duties, he was required to paint townhouses after tenants moved out. With respect to the garbage situation, Mahoney stated that the residents on the first floor of the complex were in the habit of throwing their garbage on the floor of the garbage room, and he always cleared it up at the end of the day. As to the lawn, Mahoney agreed that it might have been high in some places, but that was due to the fact that the complex was large and that it was nearly impossible to cut all the grass at one time because of the number of duties he had. Finally, Mahoney stated that after he was fired, Loveland hired one full-time and one part-time employee to replace him. The referee reversed the finding of the claims adjudicator and determined that Mahoney was discharged for misconduct related to work, thus ineligible for benefits under section 602(A) of the Unemployment Insurance Act (Ill. Rev. Stat. 1985, ch. 48, par. 432(A)).

Mahoney appealed this decision to the Board of Review of the Department of Employment Security (Board), which reversed the referee's decision and reinstated Mahoney's benefits, finding that he was

not discharged for misconduct connected with work. Specifically the Board stated:

> "In the the case before us, the claimant was discharged because of his inability to complete the assignments delegated to him by the employer. However, while he may have thereby failed to meet the standards of performance required by the employer, and thus justified the suspension or termination of his services as an employee, in the absence of willfulness or gross negligence, his discharge was not for misconduct connected with the work within the meaning of the statute."

Plaintiff sought administrative review in the circuit court pursuant to section 3—103 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 3—103) in which the court affirmed the Board's ruling. This appeal followed.

■ The plaintiff argues that the Board's finding is against the manifest weight of the evidence and that Mahoney was discharged for misconduct connected with his work. In unemployment benefits cases it is the decision of the Board which the courts review. (*Gregory v. Bernardi* (1984), 125 Ill. App. 3d 376, 379, 465 N.E.2d 1052, 1056.) Our function is not to reweigh the evidence, but to determine whether the agency's decision is against the manifest weight of the evidence. (*Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 513, 475 N.E.2d 879, 885.) Where the issue is one of credibility, we will sustain the agency's determination. *Carroll v. Board of Review* (1985), 132 Ill. App. 3d 686, 691, 477 N.E.2d 800, 803.

Section 602(A) of the Unemployment Insurance Act states that a person discharged for misconduct connected with his work is ineligible for unemployment benefits. (Ill. Rev. Stat. 1985, ch. 48, par. 432(A).) The definition of misconduct adopted in Illinois was set out in *Jackson*, where our supreme court stated:

> " '[T]he intended meaning of the term "misconduct" *** is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer.' " (*Jackson*, 105 Ill. 2d at 511-12, 475 N.E.2d at 885, quoting *Boynton Cab Co. v. Neubeck* (1941), 237 Wis. 249, 259-60, 296 N.W. 636, 640.)

702

After examining the record, we conclude that the Board's decision was not against the manifest weight of the evidence and will be affirmed.

 The record establishes that Mahoney was the sole maintenance man for a complex of 91 apartments and 30 townhouses. When he was hired, the management was aware that he had no previous maintenance experience. The record also shows that Mahoney was prepared to quit the job because of the amount of work involved, but the employer persuaded him to continue. While we agree that Mahoney's weak job performance justified his termination, his discharge was due to his inability to perform the work assigned, and the Board's conclusion that there was no evidence of wilfullness or gross negligence on Mahoney's part is not contrary to the manifest weight of the evidence.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

INGLIS and REINHARD, JJ., concur.