TIMOTHY J. CROWLEY, Plaintiff-Appellant, v. THE DEPARTMENT OF EMPLOYMENT SECURITY BOARD OF REVIEW *et al.*, Defendants-Appellees.

Second District No. 2—88—1168

Opinion filed October 19, 1989.—Rehearing denied December 12, 1989.

Kenneth K. McNeil, of Hubbard & Mahmoud, Ltd., of Chicago, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Diane Curry Grapsas, Assistant Attorney General, of Chicago, of counsel), for appellee Department of Employment Security.

George J. Lynch and Joseph J. Stevens, both of Burke, Wilson & McIlvaine, of Chicago, for appellee Transit Management of West Town Bus Company.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Timothy Crowley, appeals from a judgment of the circuit court affirming the decision of the Department of Employment Secu-

rity Board of Review (Board) which had determined that plaintiff was disqualified from receiving unemployment benefits. Plaintiff raises one issue on appeal: whether the Board's finding that he was discharged from his employment for misconduct is against the manifest weight of the evidence.

Plaintiff was a bus driver employed by Transit Management of West Town Bus Company (Transit). On May 13, 1985, plaintiff was discharged from his employment because he refused to follow a direct order. At the hearing before the referee, the following facts were adduced. Plaintiff worked for Transit since September 1976. On many occasions he had discussed customer complaints with a supervisor on his own time and was not paid to do so. On March 1, 1985, a supervisor, Mr. Beasley, asked to speak with plaintiff about passenger complaints filed against him. Plaintiff and his union steward went to Beasley's office, but plaintiff refused to discuss the complaints unless he was paid. Beasley then suspended plaintiff for five days for refusing to discuss the complaints.

On March 13, 1985, Beasley again asked to speak to plaintiff about passenger complaints filed against him. Plaintiff and the union steward went to Beasley's office, but plaintiff persisted in his refusal to discuss the complaints on his own time unless he was paid. As a consequence of plaintiff's refusal to discuss the complaints, Beasley suspended plaintiff for 10 days. The steward had advised plaintiff to attend both meetings and that if plaintiff was not paid, they would file a grievance with the union.

On May 8, 1985, another supervisor, Mr. Robare, told plaintiff that he wanted to discuss passenger complaints filed against plaintiff. Plaintiff told Robare, "If you wish to discuss passenger complaints with me, either I want to be paid, or I'll see you when I was [sic] on the clock." Shortly after this exchange, Beasley attempted to talk to plaintiff about his refusal to discuss passenger complaints with Robare. Plaintiff advised Beasley that he was not "on the clock" and that if Beasley wished to discuss anything, Beasley should see plaintiff when he was "on the clock" or should pay him. After his shift started, plaintiff went to Robare's office to discuss the complaints, but Robare told him, "I don't want to discuss the passenger complaints with you anymore. It is out of my hands." Plaintiff did not try to discuss the complaints with Beasley at that time because plaintiff had an obligation to drive a bus and stated that he "cannot be in two places at one time."

On May 10, plaintiff received a letter from Transit by which plaintiff was ordered to meet with Beasley on May 13 to discuss the com-

plaints. The letter stated that "failure to report and/or failure to respond to the complaints could result in severe discipline including possible suspension and/or discharge."

On May 13, plaintiff, accompanied by the union steward and the first vice-president of the union, went to Beasley's office. The first vice-president advised plaintiff to answer the questions. Upon learning that he would not be paid for the meeting, plaintiff walked out of the office. The union steward urged plaintiff to return to the meeting, but he refused. Transit then fired plaintiff.

On May 14, plaintiff filed a claim for unemployment compensation with the Department of Employment Security. The claims adjudicator denied plaintiff's claim, and plaintiff appealed. On appeal before the referee, plaintiff testified that the union did nothing regarding most of the grievances he filed. Plaintiff stated that he had also contacted the Federal Department of Labor Wage and Hour Division (Department of Labor), in an effort to get Transit to observe regulations with respect to the payment of wages; however, plaintiff admitted that the Department of Labor informed him that Transit had not violated any laws.

The division manager of Transit testified that plaintiff was terminated for failure to answer questions about passenger complaints. According to the division manager, the company had a long-standing policy of not paying drivers for such meetings because, at a maximum, the meetings lasted no longer than two or three minutes. When asked why the meetings could not take place during working hours, the division manager responded that "[w]e have to see [plaintiff] when he gets off work because when he's working, he's out driving a bus." The division manager admitted, however, that in April 1986, Transit started paying its employees for the meetings pursuant to *Garcia v. San Antonio Metropolitan Transit Authority* (1985), 469 U.S. 528, 83 L. Ed. 2d 1016, 105 S. Ct. 1005.

The referee affirmed the determination of the claims adjudicator and held that plaintiff was disqualified for benefits under section 602(A) of the Illinois Unemployment Insurance Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 432(A)). The Act disqualifies an individual from benefits if he has been discharged for misconduct connected with work. Plaintiff appealed to the Board. In its decision, the Board stated:

> "In the instant case the claimant had twice before been suspended for refusing to discuss customer complaints when he was not on the clock. He was advised by the union representative to discuss the matter notwithstanding he was not on the

clock. He could foresee that if he did not discuss the matter he would be discharged.

*** The claimant wilfully refused to discuss an important matter affecting him and the employer with the employer. This was a duty he owed the employer. His refusal was a deliberate act of insubordination for which he was discharged. He is not unemployed because of the lack of suitable work. He is unemployed because he wilfully elected to defy his employer."

The Board found that plaintiff was disqualified from receiving benefits because he was discharged for misconduct. The circuit court affirmed the Board's decision, and plaintiff timely filed this appeal seeking reversal of the decisions below.

■ When an employee appeals the denial of unemployment benefits, the court only reviews the decision of the Board (*Loveland Management Corp. v. Board of Review* (1988), 166 Ill. App. 3d 698, 701) to determine if it is against the manifest weight of the evidence (*Jackson v. Board of Review* (1985), 105 Ill. 2d 501, 513), that is, whether the opposite conclusion is clearly evident (*City of Wood Dale v. Illinois State Labor Relations Board* (1988), 165 Ill. App. 3d 640, 643). The Board has broad discretion, and its determinations will not be overturned merely because we might find them unwise or their policy inappropriate. *Jackson v. Department of Labor* (1988), 168 Ill. App. 3d 494, 500.

■ The issue raised in the case at bar involves the application of the Unemployment Insurance Act (Act) (Ill. Rev. Stat. 1985, ch. 48, par. 432(A)). Under the Act, an employee who has been discharged for misconduct connected with his work is ineligible for unemployment benefits. Although an employee's conduct may provide ample cause for discharge, the employee is not barred from receiving benefits under the Act unless his conduct constitutes "misconduct." (*Jackson*, 105 Ill. 2d at 507.) The supreme court has defined "misconduct" as:

"[C]onduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer." *Jackson*, 105 Ill. 2d at 511-12.

Plaintiff argues that the Board's finding that he disregarded the employer's interest in discussing customer complaints is against the

manifest weight of the evidence because Transit had no legitimate interest in discussing complaints during plaintiff's off-duty time without compensating him. Plaintiff claims that a finding of misconduct requires a preliminary finding that the employer had a legitimate interest not only in discussing the complaints with plaintiff but also in doing so only during plaintiff's off-duty time during which he would not be paid.

We believe plaintiff's argument accurately summarizes the holding in *Jackson*. While it is undisputed that an employee has the duty to discuss with his supervisor complaints regarding his job performance (*Carroll v. Board of Review* (1985), 132 Ill. App. 3d 686, 692), it is unclear whether it was reasonable for Transit to require plaintiff to discuss such complaints during plaintiff's off-duty time without paying him. This apparently is a case of first impression in Illinois, as our research has revealed no Illinois cases, nor have the parties cited any, addressing the issue of whether the failure to remain at a mandatory meeting held during an employee's off-hours for which he is not being compensated constitutes misconduct.

Plaintiff cites a Massachusetts case which stands for the proposition that an employee who refuses to perform work which the employer has no right under the law to expect has not engaged in willful misconduct. (*Kinch v. Director of Division of Employment Security* (1987), 24 Mass. App. 79, 82, 506 N.E. 2d 169, 171.) The plaintiff in *Kinch* was fired because his employer had scheduled him on a Sunday. The scheduled work would have resulted in the plaintiff having worked seven consecutive days, which would have arguably violated a Massachusetts law. The plaintiff was thereafter denied unemployment compensation. The Massachusetts court reversed the lower court's holding and stated:

> "A demand that an employee work in violation of the statute would be tantamount to insistence on 'behavior which [the] employer has [no] right to expect' ***. Depriving an employee of unemployment benefits solely for the reason that he refuses to yield to such a demand would be against public policy ***."
> *Kinch*, 24 Mass. App. at 82, 506 N.E.2d at 171.

Plaintiff argues that *Kinch* is similar to the case at bar because Transit's requests violated Federal law. Specifically, plaintiff claims that under the Fair Labor Standards Act of 1938 (Labor Act) (29 U.S.C.A. §201 *et seq.* (West 1978)), workers are entitled to be paid for any time demanded of them by their employer when that time is outside normal working hours and the employee's attendance is involuntary. The Supreme Court's decision in *Garcia v. San Antonio Metro-*

*politan Transit Authority* made the Labor Act applicable to mass-transit companies such as Transit. *Garcia*, 469 U.S. 528, 83 L. Ed. 2d 1016, 105 S. Ct. 1005.

■ In addition, plaintiff cites the following Federal regulation for the proposition that required attendance at meetings, as opposed to voluntary attendance, dictates that plaintiff should have been compensated, and, therefore, Transit did not have a right to expect otherwise:

"Attendance at lectures, meetings, training programs and similar activities need not be counted as working time if the following four criteria are met:

(a) Attendance is outside of the employee's regular working hours;

(b) Attendance is in fact voluntary;

(c) The course, lecture, or meeting is not directly related to the employee's job; and

(d) The employee does not perform my productive work during such attendance." (29 C.F.R. §785.27 (1987).)

Plaintiff argues that portions (b) and (c) of the above regulation were clearly violated because his attendance at the meetings was mandatory and directly related to, and affected, his job.

In response, Transit argues that *Kinch* and the Federal regulation cited by plaintiff are inapplicable because the meetings in the case at bar lasted only "two or three minutes" and, therefore, did not constitute compensable working time. We disagree.

The length of time required of an employee is not determinative of whether compensation is due. (See *Aiardo v. Village of Libertyville* (1989), 184 Ill. App. 3d 653, 658-59.) While Transit presented testimony that the meetings generally lasted only two or three minutes, the division manager acknowledged that even if plaintiff had spent two hours meeting with his supervisors on May 13, that two hours would not have been counted as time worked and, presumably, would not have been compensated.

The record indicates that the management of Transit did not believe that the Labor Act applied to them until April 1986. However, it is unclear from the record what the basis for this belief was given that *Garcia* was decided in February 1985. Nonetheless, Transit's mistaken belief of the law does not make its demand of plaintiff reasonable.

We can find no reason, nor has any been presented to us, why Transit was not bound by the Labor Act in 1985. As such, Transit had no right to expect plaintiff to meet in violation of the statute, and its

demand of plaintiff to do so was unreasonable. Therefore, plaintiff's refusal to comply with Transit's unreasonable demand was not "misconduct."

■ Moreover, even if plaintiff was incorrect in believing that he had the right to be paid for his time spent at the meetings, his actions on May 13, 1985, would not constitute misconduct if he reasonably believed in good faith that he was justified in leaving the meeting. (*Winklmeier v. Board of Review* (1983), 115 Ill. App. 3d 154, 156.) According to plaintiff, he was not simply ignoring his obligation to answer questions regarding his job performance; rather, he refused to attend the meetings on his own time because he "stood up for [his] rights" and "asked to be paid." Plaintiff asserts that his tactics were justified because his efforts in working through the Department of Labor and the union grievance procedure in trying to get Transit to comply with the law were ineffective.

Although Transit does not directly address plaintiff's good-faith argument, it contends that plaintiff's action on May 13 constituted a "wilful and wanton disregard to [his] employer's interest" and, therefore, apparently takes the position that such action could not have been in good faith. Transit argues that plaintiff's willfulness is demonstrated by the fact that plaintiff left the meeting even though he was aware of Transit's policy of not paying its employees for time spent discussing customer complaints; plaintiff had been suspended twice before for similar acts; plaintiff was advised by his union to attend the meetings and to answer the questions; and plaintiff knew that if he did leave the May 13 meeting he would be subject to discharge.

■ While plaintiff may have knowingly disobeyed his employer's orders, we find that he did so in a justified, good-faith belief that his employer was violating the Labor Act by requiring employees involuntarily to attend meetings on their off-duty time without pay. Because good-faith errors in judgment do not constitute misconduct, we find that plaintiff was not disqualified from receiving unemployment benefits.

For the above-stated reasons, the judgment of the circuit court is reversed, and the cause is remanded to the Board for a determination of the amount of unemployment compensation plaintiff is due.

Reversed and remanded.

REINHARD and McLAREN, JJ., concur.