CHARLES ADAMS, Plaintiff-Appellee, v. SALLY WARD, Director, Department of Employment Security, *et al.*, Defendants-Appellants (Wm. Wrigley, Jr., Company, Defendant).

First District (6th Division)   No. 1—89—3022

Opinion filed November 26, 1990.—Rehearing denied January 15, 1991.

RAKOWSKI, J., specially concurring.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and John A. Morrissey and Rosalyn B. Kaplan, Assistant Attorneys General, of Chicago, of counsel), for appellants.

Eugene C. Edwards and Carl K. Turpin, both of Cook County Legal Assistance Foundation, Inc., of Harvey, for appellee.

PRESIDING JUSTICE LaPORTA delivered the opinion of the court:

Plaintiff Charles E. Adams was fired from his job and then refused unemployment insurance benefits on the ground that he was discharged for misconduct, as defined by the Unemployment Insurance Act (Act) (Ill. Rev. Stat. 1987, ch. 48, par. 300 *et seq.*). The circuit court reversed that decision, finding the employer had no articulated "reasonable rule" governing plaintiff's conduct, plaintiff did not act with "willfulness" or "deliberateness" and the employer had suffered no harm, as required by the newly modified Act. Defendant, the Department of Employment Security Board of Review (Board), appealed, contending Adams was properly denied benefits.

We affirm the trial court decision and find that the 1988 modification of the Act requires that employers meet a new requirement, a proof of actual harm suffered, to comply with the Act's definition of "misconduct."

Adams of Calumet City was fired from his job November 28, 1988, after he admitted he threw out two company uniforms which he said were on the floor already in a pile of trash. Adams had worked at Wm. Wrigley, Jr., Company since December 1985, primarily as a parts cleaner. When a hand injury left him unable to continue in his regular job, Adams began working as a janitor for the company. His duties included cleaning locker rooms where employees changed out of dirty uniforms after working with printers ink. Though employees were to place the dirty uniforms in separate laundry bins, two were left on the floor on November 23, 1988. Adams threw the uniforms into a dumpster along with the trash. The uniforms were later retrieved by another employee and, on the next work day, Adams was fired.

Adams sought unemployment benefits for November 27, 1988, through December 10, 1988. On January 5, 1989, a claim's adjudicator denied Adams benefits, finding Adams negligently destroyed company property and his action was within his control to avoid. Adams appealed to a hearing referee, who reversed the decision of the claims adjudicator.

Adams testified before the hearing referee that on November 23, 1988, he was cleaning a locker room and came across two ink-stained uniforms in a pile of trash on the floor. He swept the uniforms up with the trash and later emptied the trash into a gondola. A printing operations supervisor, Ed Kozlowski, testified before the hearing referee that he later removed the uniforms from the trash after another employee told him of Adams' conduct. That employee was never iden-

tified or produced at subsequent hearings. The next business day, Kozlowski questioned Adams about the incident and then fired Adams.

Only the hearing referee heard testimony. No witnesses to Adams' actions were produced before the referee. Adams testified that he admitted to Kozlowski at the time that he had indeed thrown the uniforms away. He testified that the uniforms were already in a pile of trash and he believed they were to be thrown away. He testified that when he threw the uniforms away, other uniforms were already in the trash though he had not placed them there. He admitted he knew of the company policy of keeping a separate bin for ink-covered uniforms intended to be laundered.

Kozlowski testified before the referee that when he questioned Adams, Adams admitted throwing uniforms out in the past. But at that same hearing, Kozlowski later changed his statement, saying Adams admitted only throwing out the two uniforms the previous working day. Kozlowski also testified that Adams told him at the time that he was not going to be picking up "after a bunch of babies." Adams was not asked whether he made such a statement but he did deny that he had thrown uniforms away in the past.

Adams testified that before he threw the uniforms away, he was never warned or disciplined for poor work performance. Defendant contends plaintiff was warned because his supervisor spoke to him after the uniform incident, but did not fire him until the next working day.

Hearing referee Harry Robbin took testimony from Adams and two company employees, Ed Kozlowski, who was the printing operations supervisor, and Michael Aldridge, who was the personnel supervisor. In his findings of fact, Robbin said "claimant had accidentally thrown the entire bundle [of uniforms and trash] out. *** He had a good record and had not received any prior warning about his job performance." Robbin concluded in his decision February 3, 1989, that "the evidence did not establish a wrongful intentional course of conduct toward the employing unit."

The company appealed to the agency's Board, which reversed the decision of the hearing referee. The Board of Review found the record adequate and "no further evidentiary proceedings necessary." The Board found "claimant was discharged from his position doing clean up work for intentionally throwing two employees uniforms in the garbage but testified that they were very dirty [and] that he thought they were supposed to be [discarded]. However, a witness for the employer testified that he had heard that [Adams] threw the uniforms

away because he is not going to be picking up after people."

Here, the Board of Review mistakenly interprets Kozlowski's testimony as hearsay. However, we make note that Kozlowski, testifying before the hearing referee, said Adams spoke to him directly and said he wouldn't pick up after "babies."

In its conclusion, the Board noted that Adams "intentionally injured the employer's interests by putting the uniforms in the garbage. Even though the uniforms were retrieved the employer was injured because it had to go through the trouble of recovering the uniforms and investigating this incident." We note that the record contains the following scenario: an employee reported to Kozlowski that Adams threw two uniforms into the trash dumpster, that Kozlowski retrieved the uniforms and that Kozlowski then spoke with Adams about the incident. The record is devoid of any further "investigation."

Adams sought review of the Board decision by the circuit court, which heard arguments from both sides. The circuit court reversed the Board decision. This is an appeal of the circuit court decision.

■ A reviewing court cannot reweigh the evidence. Its function is to determine whether the administrative agency's decision is against the manifest weight of the evidence. (*Jackson v. Board of Review of the Department of Labor* (1985), 105 Ill. 2d 501, 513, 475 N.E.2d 879, 885.) It is the decision of the Board, not the referee, which is reviewed by the court. (*Gregory v. Bernardi* (1984), 125 Ill. App. 3d 376, 379, 465 N.E.2d 1052, 1056.) No new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court. The findings and conclusions of the administrative agency on questions of fact shall be held to be *prima facia* true and correct. (Ill. Rev. Stat. 1987, ch. 110, par. 3—110.) However, a reviewing court is not bound to give the same deference to an agency's conclusions of law, such as its construction of a statute, as it gives to its findings of fact. *Flex v. Department of Labor, Board of Review* (1984), 125 Ill. App. 3d 1021, 1024, 466 N.E.2d 1050, 1053.

■ Several Illinois cases hold unemployment insurance benefits are a conditional right and the burden of establishing eligibility rests with the claimant. (*Collier v. Department of Employment Security* (1987), 157 Ill. App. 3d 988, 510 N.E.2d 623; *Popoff v. Department of Labor* (1986), 144 Ill. App. 3d 575, 494 N.E.2d 1266.) Illinois courts have required that the Act be liberally interpreted to favor the awarding of benefits. *Flex,* 125 Ill. App. 3d at 1024.

Initially we must consider the effect of the modifications to the Unemployment Insurance Act. The Illinois Supreme Court first de-

fined the term "misconduct" in 1985 to assist the Department of Labor and reviewing courts on questions of unemployment compensation. (*Jackson v. Board of Review of the Department of Labor* (1985), 105 Ill. 2d 501, 475 N.E.2d 879.) Prior to that time, each reviewing court provided its own definition, for the statute offered none.

*Jackson* defined "misconduct" as:

> " 'wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employer's duties and obligations to his employer.' " *Jackson*, 105 Ill. 2d at 511-12, quoting *Boynton Cab Co. v. Neubeck* (1941), 237 Wis. 249, 259-60, 296 N.W. 636, 640.

That same year, however, Public Act 85—956 was introduced and subsequently enacted effective January 1, 1988, providing modifications to section 602(A) (Ill. Rev. Stat. 1987, ch. 48, par. 432(A)). The changes include a one-sentence definition of misconduct similar to the one adopted by the court in *Jackson*.

The statute defines "misconduct" as:

> "the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction." Ill. Rev. Stat. 1987, ch. 48, par. 432(A).

As of the date of the hearing before the trial court, we can locate no cases that have applied the updated statute.

The definitions in *Jackson* and the revised statute are similar in the first two requirements, (1) a showing of "willful" and "deliberate" conduct, which is (2) based on a "reasonable" employer rule. But the statute also requires a harm to the employer or another employee. In *Jackson*, the court explicitly stated that disqualifications were not limited to "cases in which the employee's conduct is harmful or potentially harmful to the employer." (*Jackson*, 105 Ill. 2d at 512.) The court further stated that "conduct which is harmful or potentially harmful to the employer may fall within this definition." (*Jackson*, 105 Ill. 2d at 512.) "An employer's financial loss is a relevant factor in determining if a claimant should be denied benefits." (*Winklmeier v. Board of Review of the Department of Labor* (1983), 115 Ill. App.

3d 154, 156, 450 N.E.2d 353, 355.) In a later case, the court held that the potential for injury is not enough to establish a finding of misconduct. *Pesce v. Board of Review of the Department of Employment Security* (1987), 161 Ill. App. 3d 879, 883, 515 N.E.2d 849, 852.

Since the statute's effective date, January 1, 1988, two first district appellate panels decided misconduct cases but relied on the language in *Jackson* and pre-1988 cases to aid in their interpretation. The misconduct alleged in each case occurred prior to January 1, 1988. (*London v. Department of Employment Security* (1988), 177 Ill. App. 3d 276, 532 N.E.2d 294; *Rias v. Department of Employment Security* (1989), 187 Ill. App. 3d 328, 543 N.E.2d 211.) Two second district cases followed the same approach. *Loveland Management Corp. v. Board of Review of the Department of Employment Security* (1988), 166 Ill. App. 3d 698, 520 N.E.2d 1070; *Crowley v. Department of Employment Security Board of Review* (1989), 190 Ill. App. 3d 900, 546 N.E.2d 1042.

A fifth case, decided in 1989, makes reference to the new statute and notes that while "deliberate and willful" misconduct will prevent a person from collecting benefits, "carelessness and negligence" will not. (*Siler v. Department of Employment Security* (1989), 192 Ill. App. 3d 971, 549 N.E.2d 760.) *Siler* and the four cases above do not discuss the question of "harm" to the employer.

Plaintiff's actions and firing here occurred after the effective date of the statute. We hold that the statute has added a third element to the test: a requirement that the employer show "harm."

■ First, an employer must show the former employee violated a reasonable company rule. Every violation of a company rule will not constitute misconduct. The rule must be a reasonable rule governing the conduct or performance of an employee. *Jackson*, 105 Ill. 2d at 512.

■ Defendant contends that the employer's reasonable rule was simply one of caring for the employer's property. Adams testified before the hearing referee that the company had one bin for trash and a separate hamper for dirty uniforms. Adams testified that when he worked as a parts cleaner, he had taken his dirty uniforms off and placed them in a hamper. He also testified that as a janitor, he had picked up dirty uniforms in the past and placed them in the hamper but that those uniforms were found on the floor in the locker area.

Defendant argues that even if the company policy was not explicit, it was implicit in the employee/employer relationship. Defendant contends that it is implicit that the employee owes a duty of loyalty and fidelity to an employer and cannot act inconsistently with his

agency or trust. *ABC Trans National Transport, Inc. v. Aeronautics Forwarders, Inc.* (1978), 62 Ill. App. 3d 671, 683, 379 N.E.2d 1228, 1237.

The defendant argues before us that obviously a policy against destruction of company property would be implicit in the employer/employee relationship and the fact that uniforms regularly were washed and reused by the company demonstrates they were of value to the company. No one testified for the company that Adams was ever told that in cleaning up the area, he was required to place all uniforms in the laundry bin regardless of their condition and regardless of where they were found.

Plaintiff denies a reasonable rule exists, posing the alleged rule as one of "whether Wrigley had a policy that uniforms in a pile of trash may reasonably be discarded." No description for Adams' job was provided. The Board did not consider what if any reasonable rule existed but ruled based on the principle that defendant had a duty. In reversing the Board's decision, the circuit court found no reasonable rule existed. "There is no rule or policy clearly articulated here in this particular case with the exception [that] soiled uniforms are to be placed by the employees in the container." The court went on to rule in Adams' favor, saying that even if the rule was implicit, Adams did not deliberately or willfully violate it.

We agree with the trial court and find Wrigley's argument inconsistent since it admits no rule existed. How is an employee to follow rules such as separating dirty uniforms from trash when he is never told that such a rule exists? We would expect that at some point in time a uniform would have no further value to the employer, at which point it would be discarded or destroyed. No testimony was produced to establish a company policy which identified the person charged with making the determination of uniform obsolescence. In the absence of such testimony, the circuit court found no articulated or implicit company rule. We agree.

As to the second element of the test, a showing of "willfulness" and "deliberateness," we look to *Jackson* and a handful of appellate court cases for guidance.

■ Every discharge even if justifiable does not disqualify the former employee from receiving unemployment benefits. An employee's conduct may be such that the employer may properly discharge him. Such conduct may not, however, constitute misconduct connected with work. (*Jackson*, 105 Ill. 2d at 512.) A finding of misconduct is improper where there was no showing of an unreasonable and improper course of conduct from which could be imputed a lack of

proper regard for the employer's interests. (*Pesce*, 161 Ill. App. 3d at 883.) The Act was not intended to benefit those who are unemployed on account of their own misdeeds. *Popoff*, 144 Ill. App. 3d at 577.

Plaintiff portrays his conduct as an isolated incident lacking evidence of an intentional course of conduct. No evidence showed prior loss of uniforms during Adams' shift. At best, plaintiff argues, Adams is guilty of a good-faith error in judgment, which is not a willful disregard of the employer's interest. *Winklmeier*, 115 Ill. App. 3d at 156, 450 N.E.2d at 355.

Adams' version of events, which was believed by the circuit court, was simply that plaintiff picked up two dirty, ink-stained, uniforms in a pile of other trash and decided that they were intended for the trash bin and not the laundry hamper. He testified he believed they were to be thrown away. He also testified that when he went to dump the trash bin into a gondola where other trash bins were emptied, he noticed that there were other uniforms in there that he had not put there.

Plaintiff's explanation is unconvincing, defendant argues. Adams knew dirty uniforms were washed and reused and he testified that part of his job as a janitor was to pick uniforms up, though he said he usually found them located between lockers. Defendant also contends plaintiff was warned about poor work performance; however, Adams' testimony indicated his supervisor first spoke to him about his work performance shortly after he threw the uniforms out. No evidence shows Adams was warned and then repeated the error.

Defendant contends that Kozlowski's testimony evidenced willfulness on Adams' part. Kozlowski testified before the hearing referee that Adams told him he didn't want to clean up after "babies." He did not testify that Adams told him that was the reason he put the uniforms in the trash dumpster.

Kozlowski testified that when he questioned Adams, plaintiff admitted he had thrown uniforms out in the past. But then later, Kozlowski testified that Adams admitted only that he threw out the two uniforms in question. The hearing referee, after taking testimony both from Adams and Kozlowski, made findings of fact that claimant had accidentally thrown the uniforms and trash out and found that the evidence did not establish a wrongful intentional course of conduct by Adams against his employer's best interest. The referee, as the only one taking testimony, was in the best position to judge witness credibility.

The Board took no additional testimony but on the record made before the hearing referee found that Adams intentionally injured the

employer's interest because even though the uniforms were retrieved, the company "had to go through the trouble of recovering the uniforms and investigating this incident." On this basis, the Board reversed the findings and conclusions of the hearing referee. The Board construed Adams' actions as a deliberate violation or disregard of implied general standards of behavior which an employer has the right to expect of his employee.

On review, the circuit court judge reversed the Board, finding Adams had no willful intention to violate the employee/employer relationship. The circuit court noted that Adams was the only eyewitness and he testified that the uniforms were already in a pile of trash when he found them. Even if a reasonable employer rule existed, the court said, "claimant *** stated that [the employer's] property was extremely soiled and it was in the garbage pile." Kozlowski testified before the hearing referee that Adams told him, "I'm not picking up after babies," but Adams was not asked about this when he testified.

■■ We agree with the trial court's finding of no willfulness. The Board found that plaintiff's conduct was intentional. On review, the circuit court made a determination from the record before the Board that the evidence did not support the Board's finding of willfulness and instead the court specifically found that the evidence required a finding of no willful conduct by plaintiff. We agree.

We add that, with no reasonable and articulated rule to guide him, it was apparently up to Adams to decide when a uniform was so soiled that it could no longer be used. No one was present when Adams determined that the uniforms should be thrown away and yet he was fired for making a decision on his own. Adams testified that he saw other uniforms in the trash when he went to dump the trash in the bin in which he had thrown the two soiled uniforms. This does not show willfulness or deliberateness on Adams part.

■■ ■ As to the third element, harm, the Board found the employer had been injured because "it had to go through the trouble of recovering the uniforms and investigating this incident." The Board argues that the "potential for financial loss to the employer is quite clear." In addition, before the circuit court, the Board argued that the statute does not quantify the amount of harm required, saying harm to the employer can be in many forms. "The plaintiff should not be exonerated from his actions because of the fortuitous intervention of the employer," the Board argues. The Board places particular emphasis on the potential financial injury to the company if plaintiff discards uniforms in the future that the employer does not have a chance to recover. It is obvious this will not happen since plaintiff's employment

has been terminated.

Plaintiff contends, however, that the statute as amended requires actual harm and that none existed in this instance. The once-discarded uniforms were retrieved by another employee. No property was destroyed. Plaintiff also points to a previous appellate court ruling that held that misconduct could not be found in a potential injury. (*Pesce*, 161 Ill. App. 3d at 883.) In addition, plaintiff argues that his ready admission that he threw away the uniforms obviated the necessity for investigation, one of the harms noted by the Board in its decision.

The circuit court agreed with the plaintiff and found "no particular harm outside the fact that if it hadn't been caught, the uniforms would have been destroyed." Defendant can identify no other harm, only potential future injury. The record supports the circuit court finding that no harm occurred.

For these reasons, we affirm the circuit court decision.

Affirmed.

McNAMARA, J., concurs.

JUSTICE RAKOWSKI, specially concurring:

While I also affirm because of the absence of a rule, I respectfully do not agree that the Board's finding of willfulness was against the manifest weight of the evidence. Further, I do not agree that harm to the employing unit did not exist merely because the uniforms were recovered.

The rule in Illinois is that findings and conclusions of an administrative agency on factual questions are *prima facie* true and correct. (Ill. Rev. Stat. 1985, ch. 110, par. 3—110.) Further, a court cannot reweigh the evidence; the agency's finding must be affirmed unless it is against the manifest weight of the evidence. (*Smith v. Department of Public Aid* (1986), 150 Ill. App. 3d 584, 586-87, 502 N.E.2d 42; *Meyers v. Illinois Department of Public Aid* (1983), 114 Ill. App. 3d 288, 291, 448 N.E.2d 1176.) In order for a finding to be considered against the manifest weight of the evidence, an opposite conclusion must be clearly evident. *Kelley v. Department of Labor* (1987), 160 Ill. App. 3d 958, 962, 513 N.E.2d 988; *Smith*, 150 Ill. App. 3d at 587.

Here, the Board found plaintiff's conduct to be willful as evidenced by his statement "that he was not going to be picking up after a bunch of babies." Certainly this is evidence from which a finder of fact could infer a willful state of mind. Whether defendant's conduct did or did not constitute willfulness was a determination to be made

730

by the Board and as such can only be reversed if an opposite conclusion is clearly evident. Such is not the case here. While the majority discusses findings made by the referee and the trial court, neither are germane. The referee's decision is not subject to judicial review. (Ill. Rev. Stat. 1989, ch. 48, par. 471.) The Board may affirm, modify, or set aside a referee's decision. (Ill. Rev. Stat. 1989, ch. 48, par. 473.) The Board, not the referee, is the ultimate finder of fact. (*Gregory v. Bernardi* (1984), 125 Ill. App. 3d 376, 379, 465 N.E.2d 1052.) Similarly, the trial court is not a finder of fact in an administrative review action; rather, its function is to determine whether the Board's decision was or was not against the manifest weight of the evidence. I submit that it was not.

Finally, the majority holds that no harm occurred in this instance because the once discarded uniforms were retrieved. While I agree that no harm occurred in this instance because of the *de minimis* nature of the incident, I believe that carried to its extreme, such a narrow construction would be incompatible with the underlying policy of the Unemployment Insurance Act. The purpose of the Act, after all, is to provide benefits to workers whose unemployment is not occasioned by their fault. (*Grobe v. Board of Review of the Department of Labor* (1951), 409 Ill. 576, 583-84, 101 N.E.2d 95.) An employee caught stealing would find protection in the majority's opinion and receive unemployment benefits so long as the items were recovered. Such a result could not have been what the legislature had in mind in enacting section 602(A) (Ill. Rev. Stat. 1987, ch. 48, par. 432(A)).