801 N.E.2d 29 (2003)
344 Ill. App.3d 533
279 Ill.Dec. 737
Phillip WROBEL, Plaintiff-Appellant,
v.
ILLINOIS DEPARTMENT OF EMPLOYMENT SECURITY, et al., Defendants-Appellees.
No. 1-02-2739.
Appellate Court of Illinois, First District, Second Division.
November 18, 2003.
*31 Alicia L. Aiken, Legal Assistance Foundation of Metropolitan Chicago, Chicago, for Appellant.
Lisa Madigan, Attorney General, Gary Feinerman, Solicitor General, and Mary Patricia Kerns, Assistant Attorney General, Chicago, for Appellees.
Justice WOLFSON, delivered the opinion of the court:
Plaintiff Philip Wrobel was a pressman for the Chicago Tribune ("Tribune") for 17 years, until his firing on September 27, 2001. After his termination, plaintiff applied for benefits under the Unemployment Insurance Act ("Act"). 820 ILCS 405/100 et seq. (West 2002) However, the Illinois Department of Employment Security ("IDES") denied his claim, agreeing with the Tribune that plaintiff was terminated due to misconduct connected with his work. 820 ILCS 405/602(A) (West 2002). Plaintiff continued to pursue benefits and requested a hearing before a referee. The referee affirmed IDES' denial of benefits. Plaintiff appealed the referee's decision to IDES' Board of Review ("Board"). The Board adopted the factual findings and legal reasoning of the referee and sustained her decision. Plaintiff then filed a complaint for administrative review of the Board's decision in the circuit court. The circuit court affirmed the Board's decision and plaintiff then appealed to this court. Plaintiff contends that his actions were not misconduct because the rule he violated was unreasonable, and because any rule violation he committed was not done willfully and deliberately. We reverse.
Plaintiff's hearing took place via a telephone conference call on November 15, 2001. Plaintiff, two of plaintiff's supervisors, and a Tribune human resources representative testified. The following facts were elicited at plaintiff's hearing.
Plaintiff's shift started at 6 a.m. In the event he was going to be absent or late, he was supposed to call a supervisor by 5 a.m.
The Tribune had an attendance policy providing for various levels of discipline based on the number of attendance infractions. The Tribune gave its employees written copies of the policy on more *32 than one occasion. Under the policy, attendance infractions would be measured in revolving 12-month periods; so, an infraction would not be counted against an employee after 12 months from that infraction. Failing to call in an absence or late arrival, or calling in late, counted as two infractions.
After one late call, late arrival, or absence, an employee would receive counseling. After two, an employee would receive a verbal warning. After three, the employee would receive a written warning. After a fourth, an employee would receive a second written warning. After a fifth, the employee would be suspended for three days. And finally, in the event of a sixth, an employee would be terminated. The Tribune retained the right to accelerate the disciplinary schedule if a supervisor saw fit to do so.
Plaintiff had attendance issues. On March 25, 1999, he had an unexcused absence, followed by two late arrivals to work on June 17 and September 23, 1999. At that point he received a written warning from the Tribune. Plaintiff had another unexcused absence on November 18, 1999, and then called in sick after 5 a.m. on March 16, 2000, leading to his second written warning. Plaintiff received a three day suspension from the Tribune after another unexcused absence on June 25, 2000. As of March 23, 2001, some of plaintiff's earlier infractions were over a year old, and no longer counted against him. So, when he failed to call in before 5 a.m. that day, he only received another written warning. On April 28, 2001, plaintiff called his supervisor after his shift was to have begun to inform him that he had overslept. On May 2, the Tribune informed plaintiff that another infraction could lead to the loss of his job. When plaintiff called in at 5:50 a.m. to tell his supervisor that he would be late on September 27, 2001, the Tribune decided to fire him.
The referee focused the testimony around the September 27, 2001 incident. Plaintiff testified that he called in late because he overslept. He explained that his electric clock-radio failed to sound that morning as a result of a power outage overnight. His back up, wind-up clock also failed to go off because he forgot to set it the night before. Plaintiff admitted that the electric clock's power could have been backed up with batteries, but that he never put any in. Plaintiff testified that he explained why he had overslept to his supervisors, and both supervisors acknowledged hearing about the malfunctioning alarm clock.
The only testimony regarding the circumstances of plaintiff's other attendance infractions was about his late arrival on April 28, 2001. Plaintiff indicated that his electric clock-radio also failed to sound on that morning, although he did not know why. One of the supervisors remembered plaintiff giving that explanation at the time.
The referee found plaintiff's explanation as to why he called in late on September 27 credible. However, the referee concluded that "the circumstances that caused his final attendance violation were within his ability to control or avoid." Because he did not take steps to ensure that his alarm clocks would go off, even in the event of a power failure, the referee determined that plaintiff's discharge was for misconduct.
The Board is the trier of fact, and its conclusions of fact are considered as prima facie true and correct. Greenlaw v. Department of Employment Security, 299 Ill.App.3d 446, 448, 233 Ill.Dec. 532, 701 N.E.2d 175 (1998). We will disturb the factual findings of the board only when *33 they are against the manifest weight of the evidence. City of Belvidere v. Illinois State Labor. Relations Board, 181 Ill.2d 191, 204, 229 Ill.Dec. 522, 692 N.E.2d 295 (1998). However, we owe no deference to the Board's conclusions of law. Katten Muchin and Zavis v. Department of Employment Security, 279 Ill.App.3d 794, 799, 216 Ill.Dec. 443, 665 N.E.2d 503 (1996). We will reverse the Board's decisions when they are based on misinterpretations or misapplications of the law. Katten Muchin and Zavis, 279 Ill.App.3d at 799, 216 Ill.Dec. 443, 665 N.E.2d 503. Whether an employee's conduct amounted to misconduct under the Act is a question of law, reviewed de novo. Grigoleit Co. v. Department of Employment Security, 282 Ill. App.3d 64, 71, 218 Ill.Dec. 374, 669 N.E.2d 105 (1996); see also London v. Department of Employment Security, 177 Ill. App.3d 276, 279, 126 Ill.Dec. 609, 532 N.E.2d 294 (1988) (Board's determination that claimant fired for tardiness was a legal conclusion). We will therefore review the Board's determination that plaintiff's absences and tardiness amounted to misconduct de novo.
The benefits provided by the Unemployment Insurance Act are meant to "alleviate the economic hardship occasioned by involuntary unemployment." Siler v. Department of Employment Security, 192 Ill.App.3d 971, 974, 140 Ill.Dec. 109, 549 N.E.2d 760 (1989). The Act should be liberally construed to favor the awarding of benefits. Lachenmyer v. Didrickson, 263 Ill.App.3d 382, 388, 200 Ill. Dec. 902, 636 N.E.2d 93 (1994). However, the Act was not meant to provide benefits if an employee was discharged for his own misdeeds. Siler, 192 Ill.App.3d at 974, 140 Ill.Dec. 109, 549 N.E.2d 760.
To be guilty of misconduct that would preclude benefits, the employee must deliberately and willfully violate a "reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." 820 ILCS 405/602(A) (West 2002). Each element must be proved to establish misconduct: the employee's willful and deliberate violation of the rule, the reasonableness of the rule, and the harm to the employer or commission of the act after receiving a warning or instruction. Caterpillar, Inc. v. Department of Employment Security, 313 Ill.App.3d 645, 653, 246 Ill. Dec. 472, 730 N.E.2d 497 (2000).
The Act's present definition of misconduct, enacted in 1988, replaced a common law definition that considered "carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer" as misconduct. Jackson v. Board of Review, 105 Ill.2d 501, 511-512, 86 Ill.Dec. 500, 475 N.E.2d 879 (1985) (setting forth the old standard). We determined that the omission of negligence from the Act's new definition was not an accident. Siler, 192 Ill.App.3d at 975, 140 Ill.Dec. 109, 549 N.E.2d 760 ("The legislature left out of the new definition of `misconduct' any mention of carelessness or negligence of any degree. This indicated that the legislature intended that persons discharged for incapacity, inadvertence, negligence or inability to perform assigned tasks should receive unemployment benefits."); Washington v. Board of Review, 211 Ill.App.3d 663, 669, 156 Ill.Dec. 90, 570 N.E.2d 566 (1991) (Jackson standard rejected in light of 1988 amendment). We concluded that the present Act "limits misconduct to *34 those acts that are intentional." Washington, 211 Ill.App.3d at 669, 156 Ill.Dec. 90, 570 N.E.2d 566.
Reviewing the record, and accepting the Board's findings of fact as true, we cannot conclude that plaintiff willfully and deliberately violated the Tribune's rules. In faulting plaintiff for not taking better care to ensure that at least one of his alarm clocks would go off so he could make it to work on time, the Board addressed plaintiff's negligence, as opposed to any intentional conduct. For example, the Board noted that plaintiff forgot to set his windup, back up clock. One does not typically forget to do something intentionally; forgetting is a matter of carelessness.
Carelessness and poor performance can certainly justify termination. Loveland Management Corp. v. Board of Review, 166 Ill.App.3d 698, 702, 117 Ill. Dec. 719, 520 N.E.2d 1070 (1988) (failure to complete assigned duties and to follow instructions justified termination). However, carelessness and poor performance alone do not make an employee ineligible for the Act's benefits. Zuaznabar v. Board of Review, 257 Ill.App.3d 354, 359, 195 Ill.Dec. 522, 628 N.E.2d 986 (1993) (to disqualify an employee from receiving unemployment benefits "an employer must satisfy a higher burden than merely proving that an employee should have been rightly discharged."); Siler, 192 Ill.App.3d at 975, 140 Ill.Dec. 109, 549 N.E.2d 760 ("Merely not `following correct procedures' or disregarding `the employer's requirements as to safety and sanitation'" did not amount to misconduct); Loveland, 166 Ill. App.3d at 702, 117 Ill.Dec. 719, 520 N.E.2d 1070 (poor performance alone was not misconduct).
Willful and deliberate employee conduct is now required to preclude unemployment benefits. Willful conduct is a conscious act made in violation of company rules, when the employee knows it is against the rules. Lachenmyer, 263 Ill. App.3d at 389, 200 Ill.Dec. 902, 636 N.E.2d 93 ("Willful behavior stems from employee awareness of a company rule that is disregarded by the employee."). The facts in Lachenmyer serve as a good example of what is meant by willful and deliberate conduct. In that case, the employee willfully violated his employer's explicit instruction to not make hostile physical contact with his coworkers and broke employer rules when he chose to throw a folder at his supervisor.
On the other hand, cases such as London and Wright v. Department of Labor, 166 Ill.App.3d 438, 441, 116 Ill.Dec. 839, 519 N.E.2d 1054 (1987) demonstrate what is not meant by willful and deliberate conduct. In London, 177 Ill.App.3d at 280, 126 Ill.Dec. 609, 532 N.E.2d 294, the plaintiff testified that she left home early enough to get to work, but that she became snared in unusual traffic congestion and road construction. We held that her resulting tardiness that day could not have been deliberate under the Act. Likewise, in Wright, 166 Ill.App.3d at 441, 116 Ill.Dec. 839, 519 N.E.2d 1054, when the plaintiff was late for work as a result of her car failing to start and a bus arriving late, we concluded that she was not late deliberately. We made our decision in these two cases knowing that there were things the plaintiffs could have done to lessen the likelihood of their tardiness, such as the Wright plaintiff better maintaining her car, or the London plaintiff leaving home earlier in anticipation of bad traffic. Our decisions in these two cases further acknowledge that an employee must consciously choose to break the employer's rules, or in this context, consciously choose to be late, in order to be ineligible for unemployment benefits.
*35 Here, however, we have no conscious acts by plaintiff, rather, we have an unconscious act: he overslept. The Board did not find, and there is nothing in the record to suggest, that plaintiff chose to sleep beyond the time he would need to in order to get up and make it to work, or call in, on time. Compare Washington, 211 Ill. App.3d at 667, 156 Ill.Dec. 90, 570 N.E.2d 566 (employee falling asleep for 30 minutes in executive board meeting not misconduct when nothing indicated that plaintiff "purposely `took a nap'").
Relying on Jackson, 105 Ill.2d at 511-12, 86 Ill.Dec. 500, 475 N.E.2d 879, and Bochenek v. Department of Employment Security, 169 Ill.App.3d 507, 121 Ill.Dec. 586, 525 N.E.2d 893 (1988), the Board asks us to infer deliberate and willful conduct on the part of the plaintiff. The Board claims that plaintiff was not fired based on his last infraction alone, and that plaintiff's infractions "recurred with sufficient frequency to demonstrate a willful violation." The Board's argument is problematic for two reasons.
First, the Board's inconsistent position as compared with that of its referee presents a problem as the Board stated it adopted the factual findings and legal reasoning of the referee in toto in its decision. While it is true that misconduct can be determined by looking at a series of incidents, as opposed to one "triggering" incident, Katten Muchin and Zavis, 279 Ill. App.3d at 799, 216 Ill.Dec. 443, 665 N.E.2d 503, the referee focused exclusively on plaintiff's late call in on September 27, 2001. As mentioned before, her factual findings surrounding that incident do not suggest a willful and deliberate disregard of an employer rule by plaintiff.
Second, the Board's argument falters because the Board admits that some of plaintiff's other attendance infractions could also have resulted from negligence. For all the record reveals, all of plaintiff's past infractions could have been the result of negligence. The record gives no indication as to the circumstances of any of the other infractions by plaintiff, save for his oversleeping on April 28, 2001, when his clock failed to sound again. As we have before, we will refuse to infer that an employee willfully and deliberately violated an employer's attendance policy based on the number of infractions alone. London, 177 Ill.App.3d at 281, 126 Ill.Dec. 609, 532 N.E.2d 294; Wright, 166 Ill.App.3d at 441, 116 Ill.Dec. 839, 519 N.E.2d 1054. The circumstances of each violation are legally significant and must be known to label a pattern of absence or tardiness as misconduct. Thus, in Wright, 166 Ill. App.3d at 441, 116 Ill.Dec. 839, 519 N.E.2d 1054, we held that when there was "no information about how tardy plaintiff was or whether she had a reasonable excuse for her tardiness" we could not determine that her pattern of tardiness amounted to misconduct.
Because we know so little about plaintiff's other tardiness and absences, we cannot conclude that he willfully and deliberately missed or was late for work. Therefore, we cannot say that he engaged in misconduct under the Act. We reverse the decision of the Board.
Reversed.
BURKE, and GARCIA, JJ., concur.