# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Abbott Industries, Inc. v. Department of Employment Security, 2011 IL App (2d) 100610**

---

| | |
|---|---|
| Appellate Court Caption | ABBOTT INDUSTRIES, INC., Plaintiff-Appellee, v. THE DEPARTMENT OF EMPLOYMENT SECURITY; BOARD OF REVIEW OF THE DEPARTMENT OF EMPLOYMENT SECURITY; and DIRECTOR OF THE DEPARTMENT OF EMPLOYMENT SECURITY, Defendants-Appellants (Cynthia M. Mitchell, Defendant). |
| District & No. | Second District<br>Docket No. 2–10–0610 |
| Filed | June 20, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Board of Review's determination that claimant was entitled to unemployment benefits, despite the absences, tardiness and recent poor grades in her plumbing apprentice training program that resulted in the termination of her employment, was improperly reversed by the trial court, since her low grades and absences were not due to intentional misconduct and the Board's conclusion was clearly erroneous, especially in the absence of any evidence that claimant set out to violate her employer's rules regarding grades and attendance and a record showing claimant was unable to comply with her employer's rules due to the need to care for her mother. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 09–MR–938; the Hon. Kenneth L. Popejoy, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Ann C. Maskaleris, Assistant Attorney General, of counsel), for appellants.

Jason Martin Loebach and John J. Chitkowski, both of Chitkowski Law Offices, of Lisle, for appellee.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Burke and Hudson concurred in the judgment and opinion.

**OPINION**

¶ 1     On May 11, 2009, the Board of Review of the Illinois Department of Employment Security (Department) determined that the claimant, Cynthia Mitchell, was entitled to unemployment benefits because her absences, tardiness, and recent poor grades in her apprentice training program were not due to intentional misconduct. The employer, Abbott Industries, Inc., filed an action for administrative review. In May 2010, the circuit court reversed the Board of Review's decision and denied Mitchell benefits, and the Department appealed. We affirm the decision of the Board of Review and reverse the judgment of the circuit court.

¶ 2                              BACKGROUND

¶ 3     The following facts come from the testimony and exhibits presented at the February 24, 2009, hearing before a Department referee. Mitchell began working for Abbott Industries, a plumbing company located in Bensenville, as an apprentice plumber in June 2006. She was enrolled in a five-year federal Department of Labor apprenticeship training program, pursuant to which she attended school and worked as an apprentice plumber in order to get her plumber's license. The federal program, under which Mitchell held a provisional apprentice plumber's license, required Mitchell to maintain at least an average grade of C in her courses (a 2.0 grade point average) during each six-month grading period. However, Abbott Industries paid for Mitchell's courses and had its own requirements for continued employment, which included a grade point average of 2.5 or higher and not receiving any grades of D or below. Abbott Industries also had an attendance policy stating that employees were expected to attend school for eight hours per week and be available to work up to another 32 hours per week on contractor assignments. Abbott Industries advised newly hired apprentice plumbers of these policies and requirements during their orientation. Mitchell signed a form acknowledging that she was aware that Abbott Industries did not tolerate

-2-

excessive absenteeism, tardiness, or no call/no show.

¶ 4 Mitchell was absent or worked less than a full eight-hour day on 25 occasions during a 51-week period in 2008. On December 14, 2008, Mitchell received her grades for the most recent six-month period. The grade point average was 2.14, and Mitchell had three Ds. Lori Abbott, the owner of Abbott Industries, testified at the hearing that Mitchell received the Ds for being absent from or tardy to school and not turning in her homework promptly. On December 20, 2008, Abbott Industries fired Mitchell. Abbott told the Department that the firing was based on Mitchell's poor grades and poor attendance.

¶ 5 At the hearing, Mitchell stated that she believed that she had been fired because of her low grades and had not understood until the hearing that her attendance was also a basis for the termination. Mitchell testified that, before December 2008, Abbott had spoken with her once regarding her grades, during her first six-month grading period. Her school would notify students and employers if students were on academic probation because of grades or attendance. During the first four grading periods, Mitchell was never on academic probation, believed that her grades had been close to a 3.0 average, and had received regular raises that were tied to her grades. The 2.14 grade point average in the fifth grading period represented her lowest grades ever.

¶ 6 Mitchell also testified that Abbott spoke with her on only one occasion regarding her absences from work. At that time, Mitchell told Abbott that her absences were caused by her mother's health problems and the fact that she was the primary caretaker for her mother. According to Mitchell, Abbott seemed compassionate and understanding during this conversation and did not warn Mitchell that she was in danger of being fired. In response to the referee's questions, Mitchell testified that her mother was disabled and that no other family members were available to care for her, as Mitchell's parents were divorced and her siblings were in the military and away at college. Mitchell disputed Abbott's account of her absences and tardiness. Mitchell recalled being absent from work occasionally, but not 25 times in a 51-week period, and did not recall being late to work ever, saying that some days she did not show up to work but that when she was working she did not arrive late.

¶ 7 Abbott testified that she had spoken with Mitchell and warned her on several occasions about her grades at school and her attendance at work. According to Abbott, she "continually told" Mitchell that Mitchell's grades needed to come up. She agreed that Mitchell was not on academic probation, which would happen if her grades dropped below a 2.0 grade point average. Abbott also testified generally that she offered Mitchell help but that Mitchell did not take her up on the offer. Abbott did not dispute Mitchell's characterization of the conversation about her absences at work, but testified that there was more than one conversation on the subject. Abbott also testified that Mitchell's attendance problems caused her business to suffer.

¶ 8 The referee issued a decision finding that Mitchell was not eligible for unemployment benefits, because she voluntarily left the job without good cause attributable to the employer. Mitchell appealed the referee's decision to the Department's Board of Review. On May 11, 2009, the Board of Review reversed the referee's decision.

¶ 9 The Board of Review began by noting that the facts of the case did not raise an issue of

voluntary leaving under section 601(A) of the Illinois Unemployment Insurance Act (Act) (820 ILCS 405/601(A) (West 2008)). When an employee has control over whether she obtains or maintains a license that is legally required for her job, and she does not obtain or maintain that license, her employer's termination of her may be viewed as a voluntary leaving rather than a discharge. *Horton v. Department of Employment Security*, 335 Ill. App. 3d 537, 541 (2002). The Board of Review found that here, however, Mitchell's grades were high enough to retain her provisional license because her grade point average for the most recent grading period was 2.14, higher than the required 2.0 average. Thus, Abbott Industries was not forced to discharge Mitchell for failure to maintain a necessary license, and the termination could not be construed as a voluntary leaving.

¶ 10     The Board of Review then considered the other basis on which Mitchell could be disqualified from receiving benefits under the Act, *i.e.*, whether Mitchell had committed misconduct within the meaning of section 602(A) of the Act (820 ILCS 405/602(A) (West 2008)). The Board of Review noted that "misconduct" sufficient to disqualify a worker from receiving benefits is defined in the statute as "the deliberate and willful violation of a reasonable rule or policy" of the employer, where the violation harmed the employer or was repeated despite a warning. *Id.* The Board of Review found that Mitchell had not committed the type of intentional disobedience that would constitute misconduct, because her absences and low grades were caused by circumstances beyond her control:

> "In this case the claimant worked to the best of her ability but was unable to meet the standards required by the employer. Although the employer may well have been justified in discharging the claimant, it was not shown that the claimant's drop in grade point average was the result of her wilful refusal to follow instructions. The claimant credibly testified that she had informed the employer of her family situation which caused her absences from work. There was no evidence adduced to support a conclusion that the claimant acted in a deliberate manner to violate the employer's rules."

The Board of Review accordingly reversed the decision of the referee and held that Mitchell was qualified to receive unemployment benefits.

¶ 11     Abbott Industries appealed the Board of Review's decision to the circuit court, filing an action for administrative review. After briefing and a hearing, the circuit court reversed the Board of Review and held that Mitchell was disqualified from receiving benefits, because she had committed misconduct. Explaining its ruling, the circuit court stated,

> "The claimant was aware of the employer's rules against being absent from work, and she could not make arrangements for someone else to take care of her mother, so she did deliberately and willfully, quote, had to take days off to handle certain situations, end of quote."

Mitchell timely appealed.

¶ 12                                                    ANALYSIS

¶ 13     This appeal presents only one substantive issue for determination: whether Mitchell's absences and poor grades constituted misconduct under the statute such that she is ineligible for unemployment benefits. Before we examine this issue, however, we pause to consider

the appropriate standard of review to apply.

¶ 14                                    Standard of Review

¶ 15        In reviewing a decision by an administrative agency, we must review the final decision of that agency. Thus, we review the decision by the Board of Review, which made the Department's final determination regarding Mitchell's claim, not the decision of the referee or the circuit court. *Sudzus v. Department of Employment Security*, 393 Ill. App. 3d 814, 819 (2009). We apply differing standards of review depending on the type of issue for which review is sought. When we review factual findings of the Board of Review, we deem those findings *prima facie* correct and will reverse only if they are against the manifest weight of the evidence. *Id.* (citing *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204-05 (1998)). Where, on the other hand, the issue is the correctness of the agency's conclusions of law, our review is *de novo*. *Id.* Finally, where the determination is a mixed question of fact and law, we apply the "clearly erroneous" standard and will reverse only if our review of the record and the agency's determination leaves us with the "definite and firm conviction" that the decision was a mistake. (Internal quotation marks omitted.) *Id.* at 820 (quoting *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 393 (2001)).

¶ 16        "The question of whether an employee was *** terminated for misconduct in connection with his work involves a mixed question of law and fact, to which we *** apply the clearly erroneous standard of review." *Id.* at 826. Abbott Industries argues that the issue is a legal one and so we should apply *de novo* review, citing older cases that rely on *Grigoleit Co. v. Department of Employment Security*, 282 Ill. App. 3d 64, 71 (1996). See *Wrobel v. Department of Employment Security*, 344 Ill. App. 3d 533, 536 (2003) (citing *Grigoleit*); *Caterpillar, Inc. v. Department of Employment Security*, 313 Ill. App. 3d 645, 653 (2000) (citing *Grigoleit*); *Grigoleit*, 282 Ill. App. 3d at 71. We reject this argument. Since *Grigoleit* was decided, the Illinois Supreme Court has clarified the definition of mixed questions of fact and law and repeatedly affirmed the application of the "clearly erroneous" standard to such questions. In *City of Belvidere*, 181 Ill. 2d at 205, the supreme court explained that a mixed question of fact and law is one in which the court must determine whether a certain set of facts is sufficient to produce a given legal effect. In *AFM Messenger Service,* 198 Ill. 2d at 391, the supreme court expanded upon that explanation and noted that the determination of whether the facts in a particular case satisfied a given statutory requirement was an example of a mixed question of fact and law. *Id.* (quoting *Pullman-Standard v. Swint*, 456 U.S. 273, 289 n.19 (1982)). The question of whether, in a particular case, the facts found by the Board of Review amount to misconduct under the statutory definition of that term is similarly a mixed question of fact and law. This is the approach taken in more recent unemployment benefit cases involving the issue of misconduct, where the courts have applied the "clearly erroneous" standard. See *Phistry v. Department of Employment Security*, 405 Ill. App. 3d 604, 607 (2010); *Sudzus*, 393 Ill. App. 3d at 819; *Hurst v. Department of Employment Security*, 393 Ill. App. 3d 323, 327 (2009); *Manning v. Department of Employment Security*, 365 Ill. App. 3d 553, 557 (2006) (rejecting argument that determination of whether employee's actions amounted to misconduct was legal conclusion

subject to *de novo* review and finding that "clearly erroneous" standard applicable to mixed questions of fact and law was proper standard); *Oleszczuk v. Department of Employment Security*, 336 Ill. App. 3d 46, 50 (2002); *cf. Czajka v. Department of Employment Security*, 387 Ill. App. 3d 168, 173 (2008) (citing *Grigoleit* but applying "clearly erroneous" standard, not *de novo* standard). To the extent that this court's previous decision in *Caterpillar*, which relied upon *Grigoleit*, is to the contrary, we depart from that position and hold that the question of whether an employee committed misconduct under the Act is a mixed question of fact and law subject to the "clearly erroneous" standard.

¶ 17                                    Did Mitchell Commit Misconduct?

¶ 18        We now turn to the question of whether the Board of Review erred in concluding that Mitchell did not engage in misconduct. As we have noted, the term "misconduct" is defined in the Act as (1) "the deliberate and willful violation" of (2) a reasonable rule or policy of the employer where (3) the violation harms the employer or is repeated after a warning. 820 ILCS 405/602(A) (West 2008). No dispute is raised regarding the second and third requirements: the existence and reasonableness of Abbott Industries' policies regarding its apprentices' grades and attendance, and the harm to Abbott Industries flowing from the violation of those policies. Nor is there any question that Mitchell violated Abbott Industries' policies through her low grades and absences. The sole issue is whether Mitchell's absences and low grades were "deliberate and willful" such that they constituted misconduct under the Act. The Board of Review held that they were not, because they were not the result of a deliberate decision by Mitchell to violate Abbott Industries' rules. We examine whether this conclusion was clearly erroneous.

¶ 19        In construing the requirement that an employee's violations of the employer's rules must be "deliberate and willful," courts have repeatedly held that this language reflects the General Assembly's intent that only those who intentionally act contrary to their employers' rules should be disqualified on the basis of misconduct, while those who have been discharged because of their inadvertent or negligent acts, or their incapacity or inability to perform their assigned tasks, should receive benefits. See *Messer & Stilp, Ltd. v. Department of Employment Security*, 392 Ill. App. 3d 849, 860 (2009); *Wrobel*, 344 Ill. App. 3d at 537; *Zuaznabar v. Board of Review of the Department of Employment Security*, 257 Ill. App. 3d 354, 357 (1993); *Siler v. Department of Employment Security*, 192 Ill. App. 3d 971, 975 (1989). Abbott Industries concedes that "misconduct under the Act is limited to an employee's intentional acts," but argues that the Board of Review misapplied this definition. We therefore look to the evidence in the record to see whether it leaves us with the definite and firm conviction that the Board of Review erred in finding that Mitchell did not commit intentional misconduct.

¶ 20        In this case, the Board of Review found that there was no evidence that Mitchell set out to violate Abbott Industries' rules regarding grades or absences. As to her grades, there was no testimony that Mitchell was deliberately refusing to do the work associated with her classes or in any other manner purposely refusing to put forth a good-faith effort in those classes. The only evidence about the reason for Mitchell's low grades was Abbott's

testimony that they were the result of her absences and not turning in work promptly, which also related to her absences. (Although this statement was hearsay, it was not objected to, and thus it can be considered for its natural probative value. *Village Discount Outlet v. Department of Employment Security*, 384 Ill. App. 3d 522, 525 (2008).) Thus, there was no evidence of intentional misconduct in connection with Mitchell's grades apart from the issue of whether her absences could be said to be intentional. We therefore turn to that question.

¶ 21 Abbott Industries argues that Mitchell's absences were intentional because she consciously chose to care for her mother instead of coming to work. The circuit court adopted this same approach, stating that Mitchell "deliberately and willfully 'had to take days off to handle certain situations.' " (The circuit court was apparently quoting Mitchell or her attorney.) However, this approach rests on a misunderstanding of what constitutes an intentional act. The Board of Review found that Mitchell's absences were caused by the fact that she was the primary caretaker for her ill mother. This finding was based on undisputed evidence: Abbott Industries offered no contrary evidence and did not suggest that Mitchell was being untruthful when she described her mother's ill health as the reason for her absences. Her mother's ill health was a circumstance beyond Mitchell's control. There is no suggestion in the record that any of Mitchell's absences was not absolutely necessary in order to provide for her mother's care. To the contrary, Mitchell testified without contradiction that there were no other family members available to provide such care. Indeed, in the same passage quoted above, the circuit court noted that the evidence showed that Mitchell "could not make arrangements for someone else to take care of her mother."

¶ 22 The record thus establishes that Mitchell's absences were due to a factor beyond her control–her mother's ill health–and an inability–her inability to find anyone else to care for her mother. Neither of these can support a finding of deliberate and willful violation of Abbott Industries' attendance policy. To the contrary, courts have held that, when an employee is unable to conform to her employer's expectations despite her good-faith efforts, she is eligible for benefits. For instance, an employee was eligible for benefits despite being fired for falling asleep for 30 minutes during a meeting, where there was no evidence that she intended to sleep: she was simply unable to remain awake. *Washington v. Board of Review*, 211 Ill. App. 3d 663, 669 (1991). Likewise, in *Wrobel*, the reviewing court held that an employee who was fired for being late to work after repeated warnings was nevertheless eligible for benefits, because his failure to ensure that at least one of his two alarm clocks would go off despite a power failure amounted to negligence, not intentional conduct. *Wrobel*, 344 Ill. App. 3d at 537. When an employee makes reasonable efforts to comply with her employer's rules but is frustrated by events beyond her control, she has not shown the type of deliberate disregard for the rules that would constitute misconduct. *London v. Department of Employment Security*, 177 Ill. App. 3d 276, 278-79 (1988) (employee left for work early enough to get there on time but encountered unusually bad traffic due to construction). Here, as in those cases, there is no evidence that Mitchell took her employer's attendance rules lightly or intentionally disregarded them. Rather, the record establishes that she was unable to comply with those rules due to the need to care for her mother and the lack of alternatives. Because this is not the type of deliberate and willful act contemplated by the legislature when it defined the term "misconduct," the Board of Review's conclusion that

Mitchell was eligible for benefits was not clearly erroneous.

¶ 23　Abbott Industries cites *Bochenek v. Department of Employment Security*, 169 Ill. App. 3d 507 (1988), in support of its argument that a pattern of absences can constitute misconduct. In that case, the plaintiff was fired for being tardy and absent despite repeated warnings over an 18-month period. The plaintiff testified that he had psychological problems including depression and delusions of grandeur that made it very difficult for him to get to work on time and work a full day. He also submitted his doctor's statement that the plaintiff was diagnosed with schizo-affective disorder and was on medication. Despite stating that the plaintiff "was unable" to improve his attendance despite the warnings (*id.* at 508), the court held that his absenteeism and tardiness "had reached such a degree of recurrence as to be considered misconduct" and therefore affirmed the denial of benefits (*id.* at 509). In *Bochenek*, the plaintiff had been absent 7 days and late 9 days during the previous 81 work days since his last warning, thus displaying attendance problems on 16 (or approximately 20%) of his most recent work days. Abbott Industries argues that Mitchell's attendance record was even worse because she either was absent or worked less than eight hours on 25 occasions in a 51-week period.

¶ 24　Leaving aside Abbott Industries' faulty arithmetical skills (51 weeks of 5 work days each is 255 work days, and so 25 absences or partial days would be approximately 10%, or half the rate of the plaintiff in *Bochenek*), its reliance on the holding in *Bochenek* is misplaced. *Bochenek* was decided under the former common-law definition of "misconduct" contained in *Jackson v. Board of Review of the Department of Labor*, 105 Ill. 2d 501, 511-12 (1985), which included "carelessness or negligence of such degree or recurrence as to manifest *** wrongful intent." (Internal quotation marks omitted.) This definition was superseded by the legislature's enactment of the Act, which took effect on January 1, 1988, and under which "misconduct" must now be deliberate and willful. See *Wrobel*, 344 Ill. App. 3d at 537. Accordingly, *Bochenek* is neither controlling nor persuasive. And like the court in *Wrobel*, we will not "infer that an employee willfully and deliberately violated an employer's attendance policy based on the number of infractions alone" (*id.* at 539), especially where, as here, it appears that the same lack of willfulness applied to each violation.

¶ 25　In affirming Mitchell's eligibility for unemployment benefits, we do not mean to suggest that we are unsympathetic with Abbott Industries' decision to fire Mitchell. The inability to measure up to an employer's reasonable rules certainly may justify termination. However, the Act requires a different legal standard to be applied to the separate question of whether a terminated employee is eligible to receive unemployment benefits. To disqualify an employee from receiving benefits, "an employer must satisfy a higher burden than merely proving that an employee should have been rightly discharged." *Zuaznabar*, 257 Ill. App. 3d at 359.

¶ 26　For the foregoing reasons, we affirm the decision of the Board of Review and reverse the judgment of the circuit court of Du Page County.

¶ 27　Reversed.