2017 IL App (3d) 150676

Opinion filed March 28, 2017

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2017

| | | |
|---|---|---|
| PETERSON VET, INC., | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Plaintiff-Appellee, | ) | Tazewell County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | |
| THE DEPARTMENT OF | ) | |
| EMPLOYMENT SECURITY, an | ) | |
| administrative agency of the State of | ) | |
| Illinois; DIRECTOR OF EMPLOYMENT | ) | |
| SECURITY; THE DEPARTMENT OF | ) | Appeal No. 3-15-0676 |
| EMPLOYMENT SECURITY, BOARD | ) | Circuit No. 14-MR-162 |
| OF REVIEW, an administrative agency of | ) | |
| the State of Illinois, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| KARA TIMMERMAN, | ) | The Honorable |
| | ) | David J. Dubicki, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justices O'Brien and Schmidt concurred in the judgment and opinion.

**OPINION**

¶ 1        Plaintiff, Peterson Vet, Inc., filed a complaint in the trial court for administrative review

of a decision of the Department of Employment Security Board of Review (Board) that granted

unemployment insurance benefits (unemployment benefits or benefits) to one of Peterson Vet's former employees, defendant Kara Timmerman. Upon review, the trial court reversed the Board's decision and denied Timmerman's claim for benefits. Timmerman appeals. We set aside the Board's decision and affirm the trial court's judgment.

¶ 2                                          FACTS

¶ 3        Timmerman was employed by Peterson Vet (employer) from July 30, 2013, to February 10, 2014, as a veterinary technician and was paid $13.25 an hour. Shortly after being discharged from her employment, Timmerman filed an application with the Department of Employment Security (Department) for unemployment benefits. The employer filed a timely protest to Timmerman's claim, alleging that Timmerman was ineligible for benefits under section 602(A) of the Unemployment Insurance Act (Act) (820 ILCS 405/602(A) (West 2014)) because she had been discharged for misconduct connected with her work. In its letter of protest, the employer stated that Timmerman was discharged for dishonesty related to the status of her certified veterinary technician (CVT) license because she had falsely represented on her employment application that she was a CVT when, in fact, she had allowed her CVT license to lapse. After reviewing the matter, a Department claims adjudicator determined that Timmerman was ineligible for unemployment benefits based upon misconduct.

¶ 4        Timmerman filed a letter of appeal, challenging the claims adjudicator's ruling. In April, 2014, a telephone hearing was held on the matter before a Department referee. The evidence presented at that hearing can be summarized as follows. Lori Vogler, the office manager of the employer's veterinary clinic (clinic), testified that the employer had purchased the clinic from Dr. Annette Guswiler on July 30, 2013. At that time, all of the employees that worked for Guswiler, including Timmerman, were hired by the employer. As part of that process, all of the

2

employees were required to fill out new employment applications and were explicitly instructed to fill out those applications truthfully and accurately.

¶ 5     According to Vogler, Timmerman made false statements on her employment application when she wrote in "CVT" under both the job-title section of the application and under the licenses, certificates, and special skills section of the application. Vogler stated that the clinic was not required by law to have a CVT on staff but had elected to do so. Vogler testified further that Timmerman had also represented that she was a CVT on sign-in sheets for two safety-training meetings in December 2013 and January 2014. In addition, on two different occasions during those same two months, Vogler and Dr. Justin Peterson had discussions with Timmerman about job performance during which time it was pointed out to Timmerman that as a CVT, she was paid at a higher rate and was expected to perform accordingly. On both of those occasions, Timmerman had the opportunity to inform Dr. Peterson that she was no longer certified but did not do so.

¶ 6     In January 2014, Vogler was told by another employee that Timmerman's CVT license had lapsed. Vogler checked the applicable state website and found out that Timmerman's license had expired in January 2013. Vogler confronted Timmerman about the matter on February 10, 2014, and Timmerman acknowledged that she had allowed her license to expire. The employer discharged Timmerman at that time.

¶ 7     Emily Puckett testified that she was employed by the clinic and that she worked with Timmerman. In August 2013, Puckett had a conversation with Timmerman at the clinic, and Timmerman told Puckett that she was the only CVT at the facility. In addition, in November 2013, a meeting was held at the clinic on how to handle emergency situations. During the meeting, when Puckett asked about needing to know or learning how to do cardiopulmonary

resuscitation (CPR), Timmerman responded that she was the only person who would be doing CPR, aside from the doctors, because she was the only CVT.

¶ 8 Another employee of the clinic, Amber Stine, gave similar testimony at the hearing about the statement that Timmerman had made at the November 2013 meeting.

¶ 9 Jacqueline Smith testified that she was employed by the clinic and was present when Timmerman signed the sign-in sheet at one of the safety meetings. Timmerman signed the job-description portion of the sheet as being a CVT. Smith asked Timmerman what "CVT" meant, and Timmerman told her that it meant certified veterinary technician.

¶ 10 Stacy Loenneke testified that she was employed by the clinic and that she had a discussion with Timmerman at some point between Thanksgiving and Christmas 2013 about employment. During that discussion, Timmerman told Loenneke that she had allowed her CVT license to lapse because she could not afford to renew it. When Loenneke asked Timmerman whether it was the responsibility of Timmerman or the clinic to pay for the license renewal, Timmerman responded that it was her responsibility.

¶ 11 Michael Johnston testified that he was employed at the clinic and that in October 2013, he heard Timmerman identify herself as a CVT during a phone call that she was having with a third party.

¶ 12 Dr. Justin Peterson testified that he was the individual who ran the clinic. On July 30, 2013, when the employer purchased the clinic, each employee was asked to fill out a job application. Peterson identified the application that Timmerman had filled out and had signed on that date. Under the job title section of the application, "CVT" was written in. In addition, under the certificates and special skills section of the application, "CVT" was written in there as well.

4

Peterson was present when Timmerman was terminated, and Timmerman acknowledged that she was not a licensed CVT and that her license had lapsed the prior year.

¶ 13     Dr. Annette Guswiler, the former owner of the clinic, testified for Timmerman that Timmerman worked for her as a CVT for almost five years. Guswiler did not remember Timmerman telling her that she had allowed her CVT license to lapse but did not doubt that Timmerman had told her because Timmerman had always been honest with Guswiler. According to Guswiler, it would not have mattered to her that Timmerman had allowed her CVT license to lapse.

¶ 14     At the hearing, Timmerman testified on her own behalf about her employment at the clinic. During that testimony, Timmerman identified the employment application that she had filled out for the employer in July 2013 and had signed. Timmerman confirmed that under the certificates, licenses, and special skills section of the application, she had written in "CVT." Timmerman also acknowledged that below her signature on the application, the application stated that: (1) the information she provided was subject to verification and that falsification or misrepresentation could disqualify her from consideration or, if she was hired, could be grounds for termination of her employment at a later date; and (2) she was certifying that all the information on the application was true, correct, and complete to the best of her knowledge.

¶ 15     Timmerman testified further that she did not believe that she had misrepresented her qualifications. According to Timmerman, she merely listed on the employment application that she was a CVT, not that she was a licensed CVT. Timmerman stated that she had listed herself as a CVT on the application because she had completed a two-year college program, had received a certificate from that program, and had passed the board exams. Timmerman also listed the information because the application itself asked about certifications. It was Timmerman's

5

position that she was a CVT at the time when she filled out the employment application and that she was still a CVT at the time of the hearing—she was just no longer a licensed CVT. Timmerman commented that she was not required by law to have a license to practice as a veterinary technician.

¶ 16        Timmerman stated that she did not renew her license because at the time, she and her husband were filing for bankruptcy, she could not afford the $50 renewal fee, and it did not matter to Dr. Guswiler whether Timmerman was licensed or not. According to Timmerman, neither Dr. Peterson nor Vogler ever told Timmerman one way or the other whether the employer required Timmerman to renew her CVT license. Timmerman agreed that she did not tell Dr. Peterson or Vogler that her license had expired at either of the two work-performance meetings that were mentioned. Timmerman also did not dispute that she had told some of her coworkers that she was a CVT. Timmerman maintained during her testimony, however, that she was a CVT at that time and that she was still a CVT.

¶ 17        In rebuttal testimony, Vogler referred to certain portions of the Illinois Administrative Code which, according to Vogler, provided that to be a CVT, a person had to renew his or her CVT license, pay the renewal fee, and obtain 15 hours of continuing education (see 68 Ill. Adm. Code 1505.50, amended at 40 Ill. Reg. 2936, 2943 (eff. Feb. 16, 2016)).

¶ 18        In addition to the above testimony, numerous documents were admitted as exhibits in the hearing before the referee. Some of the documents that were admitted were Timmerman's employment application; two Internet search results, which showed that Timmerman's CVT license had expired on January 31, 2013, and had not been renewed; copies of sign-in sheets for two safety meetings, which showed that Timmerman had signed in as a CVT; and various portions of the Administrative Code.

6

¶ 19 After all of the evidence had been presented and the referee had listened to the arguments of the parties, the hearing was concluded. The referee issued a written decision later that same month, finding that Timmerman had been discharged for misconduct connected with her work and that she was ineligible for unemployment benefits under the Act. In reaching that conclusion, the referee noted that: (1) Timmerman had provided false information at the time of her hire and had persisted in presenting that false information at the hearing; and (2) Timmerman's behavior violated the employer's requirements and broke the bond of trust essential to the employee relationship. The referee, therefore, affirmed the decision of the claims adjudicator.

¶ 20 In May 2014, Timmerman appealed the referee's decision to the Board. The Board reviewed the evidence that had been presented in the hearing before the referee and considered the written arguments that Timmerman had made in her appeal to the Board. After doing so, the Board determined that no additional evidentiary proceedings were necessary. In July 2014, the Board issued a written ruling, reversing the referee's decision. In analyzing the issue, the Board applied a four factor test from a 1985 digest of adjudication precedents to determine whether a false statement or omission in an employment application constituted misconduct under the Act. According to the Board, to constitute misconduct under the test, all four of the following factors had to be satisfied: (1) the employer's requirement as to what information the prospective worker had to reveal on the work application had to be reasonable; (2) the employer's accurate knowledge of the requested information had to be material in the selection of the worker for the job; (3) the false statement or omission had to be willfully made by the worker; and (4) the falsification of the work application had to tend to injure the interests of the employer.

¶ 21 Applying that test to the facts of the present case, the Board found that the information that the employer required Timmerman to reveal on the employment application was reasonable,

7

that Timmerman understood what it meant to be certified, that she was willfully and deliberately not truthful with the employer, and that her false statement tended to injure the interests of the employer because Timmerman received more money than the other veterinary technicians, which she would not have received if she had been truthful with the employer. The Board went on to conclude, however, that Timmerman's false statement was not material in the employer's decision to hire Timmerman for the position because the record did not show that Timmerman would not have been hired if the truth had been known that Timmerman was not a CVT. Rather, the record showed only that Timmerman would have been hired at a lesser rate of pay. Thus, according to the Board, the required information was not material in the employer's selection of Timmerman for employment, only in the assigned rate of pay that Timmerman received. The Board, therefore, granted Timmerman's claim for unemployment benefits.

¶ 22    In September 2014, the employer filed the instant administrative review action in the trial court to challenge the Board's ruling. Upon review, the trial court reversed the Board's decision. In reaching that conclusion, the trial court found, contrary to the determination of the Board, that Timmerman's false statement or misrepresentation on the employment application about being a CVT was material to the employer's selection of Timmerman for the position. The trial court, therefore, denied Timmerman's claim for benefits. Timmerman appealed.

¶ 23                                    ANALYSIS

¶ 24    On appeal, Timmerman argues that the trial court erred in reversing the Board's ruling and in denying Timmerman's claim for unemployment benefits. Timmerman asserts that the trial court's ruling was erroneous because: (1) it was contrary to the manifest weight of the evidence; (2) the trial court improperly considered criminal sanctions in determining whether the alleged misrepresentation was material; and (3) the trial court failed to identify what evidence it relied

8

upon in overturning the Board's decision. For all of the reasons stated, Timmerman asks that we reverse the trial court's judgment and that we remand this case to the trial court for further proceedings.

¶ 25        The employer argues that the Board's ruling granting Timmerman's application for unemployment benefits was properly overturned by the trial court. The employer asserts that the Board committed clear error when it determined that Timmerman's false statement about the status of her CVT license was not material to the employer's decision to hire Timmerman, despite the Board having found that Timmerman had willfully and intentionally lied to the employer about the matter and that the employer's interests were injured by Timmerman's false statement. The employer asserts further that Timmerman's false statement about the status of her CVT license was misconduct under the law, was appropriate grounds for termination of Timmerman's employment, and served to disqualify Timmerman from receiving unemployment benefits under the Act. For all of the reasons set forth, the employer asks that we reverse the ruling of the Board (and affirm the judgment of the trial court).

¶ 26        Judicial review of the Board's decision is governed by the Administrative Review Law and extends to all questions of law and fact presented by the entire record. 820 ILCS 405/1100 (West 2014); 735 ILCS 5/3-110 (West 2014); *Petrovic v. Department of Employment Security*, 2016 IL 118562, ¶ 22; *AFM Messenger Service, Inc. v. Department of Employment Security*, 198 Ill. 2d 380, 390 (2001). On administrative review, the appellate court reviews the final decision of the Board, not the decision of the trial court. *Petrovic*, 2016 IL 118562, ¶ 22. The Board's determination as to misconduct is a mixed question of fact and law and is subject to a clearly erroneous standard of review on appeal. *Id.* ¶ 21; *Abbott Industries, Inc. v. Department of Employment Security*, 2011 IL App (2d) 100610, ¶ 16. Under the clearly erroneous standard, the

9

Board's decision will not be overturned unless the appellate court, after reviewing the entire record, is left with the definite and firm conviction that a mistake has been committed. *Petrovic*, 2016 IL 118562, ¶¶ 21-22.

¶ 27 Under the Act, an employee is ineligible for unemployment insurance benefits if the employee was discharged for misconduct connected to his or her work. 820 ILCS 405/602(A) (West 2014); *Petrovic*, 2016 IL 118562, ¶¶ 24-25. Misconduct is defined in the Act as:

> "the deliberate and willful violation of a reasonable rule or policy of the employing unit, governing the individual's behavior in performance of his work, provided such violation has harmed the employing unit or other employees or has been repeated by the individual despite a warning or other explicit instruction from the employing unit." 820 ILCS 405/602(A) (West 2014).

¶ 28 The Act's misconduct disqualification reflects the legislature's intent not to exclude all employees who have been fired from their jobs from receiving unemployment benefits, but, rather, to exclude only those employees who intentionally commit conduct which they know is likely to result in their termination. See *Petrovic*, 2016 IL 118562, ¶ 27; *Abbott Industries, Inc.*, 2011 IL App (2d) 100610, ¶ 19 (recognizing the legislature's intent that those employees who have been discharged because of their inadvertent or negligent acts or their incapacity or inability to perform their assigned tasks should not be excluded from receiving benefits on the basis of misconduct). Thus, an employer who seeks to establish that an employee should be disqualified from receiving unemployment benefits because of misconduct must satisfy a higher burden than merely proving that the employee was rightly discharged. See *Petrovic*, 2016 IL 118562, ¶ 27. Rather, to establish the misconduct disqualification under the Act, the employer must prove all three of the following elements with competent evidence in the record: (1) that the employer had

10

a reasonable work rule or policy that governed the employee's behavior in the performance of his or her work; (2) that the employee deliberately and willfully violated that rule or policy; and (3) that the violation either harmed the employer or other employees or was repeated by the employee despite a previous warning or explicit instruction from the employer to cease the conduct. See *id.* ¶¶ 26-28; *Manning v. Department of Employment Security*, 365 Ill. App. 3d 553, 557 (2006).

¶ 29        In addition to the above requirements, in the context of a prospective employee's false statement or omission in an employment application, the appellate court has adopted the Board's requirement that the false statement or omission must be made as to a material fact for misconduct to occur. See *Roundtree v. Board of Review*, 4 Ill. App. 3d 695, 696-98 (1972). Thus, a false answer to a material question on an employment application may constitute misconduct connected to the employee's work that will disqualify the employee from benefits under the Act. See *id.* (finding under the circumstances of the case that the employee's denial of a prior felony conviction in his employment application was misconduct under the Act that made the employee ineligible for unemployment benefits); see also *Price v. Civil Service Board of the Metropolitan Sanitary District of Greater Chicago*, 123 Ill. App. 2d 2, 9 (1970) (affirming the reasonableness of a Civil Service rule that provided for the dismissal of any employee who made a false statement of material fact in his application for employment). In so doing, the appellate court noted that the Board's holding in that regard reflected the Board's opinion that there was an integral connection between the material information requested on an employment application and the employment gained therefrom. See *Roundtree*, 4 Ill. App. 3d at 697. In fact, section 602(A) of the Act has since been amended to specifically include as examples of misconduct the falsification of an employment application in an effort to obtain employment through subterfuge

11

and the failure to maintain licenses, registrations, and certifications reasonably required by the employer (see Pub. Act 99-488 § 5 (eff. Jan. 3, 2016) (amending 820 ILCS 405/602(A)), although the amended version of the statute is not applicable here.

¶ 30     In the present case, the only issue on appeal is whether the Board's determination—that Timmerman's false statement was not material—is clearly erroneous. See *Petrovic*, 2016 IL 118562, ¶¶ 21-22; *Abbott Industries, Inc.*, 2011 IL App (2d) 100610, ¶¶ 15-16. The other elements of misconduct were found to be satisfied by the Board, were not disputed in the trial court, and have not been disputed here. As to the issue of materiality, when we review the entire record before the Board in light of the above legal principles, we are indeed left with a definite and firm conviction that the Board committed a mistake in determining that Timmerman's false statement was not material. See *Petrovic*, 2016 IL 118562, ¶¶ 21-22; *Abbott Industries, Inc.*, 2011 IL App (2d) 100610, ¶¶ 15-16. The record shows that, although the employer was not required to hire a CVT, it had chosen to do so and had elected to employ Timmerman in that position. Because the employer believed that Timmerman was a CVT, the employer paid Timmerman at a higher rate than the other veterinary technicians, gave Timmerman more responsibility (the ability to perform CPR on the animals), and held Timmerman to a higher standard of conduct. Indeed, the employer would not have been able to hire Timmerman as a CVT if Timmerman had told the employer from the outset that she no longer held a valid CVT license. The materiality of the false statement is further evidenced by the fact that the employer immediately discharged Timmerman after the employer confronted Timmerman about the matter and Timmerman acknowledged that she had allowed her CVT license to lapse. Moreover, in considering whether the false statement was material, we can not discount the negative impact on the employer-employee relationship that undoubtedly would have been caused by Timmerman's

12

breach of trust. See *Roundtree*, 4 Ill. App. 3d at 697 (noting that the Board's holding reflected the Board's opinion that there was an integral connection between the material information requested on an employment application and the employment gained therefrom).

¶ 31    A fundamental flaw in the Board's ruling in this case is that the Board ignored the true factual circumstances before it. Instead of only considering whether the employer would have hired Timmerman if she had been truthful on her employment application about the status of her CVT license, the Board also should have considered whether the employer would have hired Timmerman if the employer had known that Timmerman had made the false statement on her employment application. See *id.* Only then could the Board truly give weight to the negative effect of Timmerman's false statement in determining whether the statement was material in the employment decision.

¶ 32    Thus, under the circumstances of the present case, even though we have given the appropriate amount of deference to the Board's determination, we must conclude that the Board's finding of a lack of materiality was clearly erroneous. *Petrovic*, 2016 IL 118562, ¶¶ 21-22; *Abbott Industries, Inc.*, 2011 IL App (2d) 100610, ¶¶ 15-16; *Roundtree*, 4 Ill. App. 3d at 696-98; *Price*, 123 Ill. App. 2d at 9; see also *Shah v. Chicago Title & Trust Co.*, 119 Ill. App. 3d 658, 660 (1983) (recognizing in a different context that a misrepresentation is material if it relates to a matter upon which the plaintiff could be expected to rely in determining whether to engage in the conduct at question). We, therefore, set aside the ruling of the Board, which granted Timmerman unemployment benefits, and affirm the trial court's judgment, which reached the opposite conclusion.

13

¶ 33                                    CONCLUSION

¶ 34         For the foregoing reasons, we set aside the Board's ruling and affirm the trial court's

judgment. The final result, therefore, is that Timmerman's claim for unemployment benefits is

denied.

¶ 35         Board ruling set aside; circuit court judgment affirmed.